REDFORD MOVING & STORAGE COMPANY *v.*
CITY OF DETROIT.

1. Municipal Corporations—Zoning Ordinance—Reasonableness.
   A zoning ordinance must be reasonable and its reasonableness
   becomes the test of its legality.

2. Same—Reasonableness of Zoning Ordinance.
   Each case involving a determination of the reasonableness of
   a zoning ordinance must be determined upon its own facts.

3. Same—Zoning Ordinance—Judicial Review of Reasonableness.
   The reasonableness of the exercise of municipal power in the
   adoption of a zoning ordinance is always subject to judicial
   review.

4. Same—Zoning Ordinance—Value.
   Conclusion of trial judge that the highest and best use of plain-
   tiff's property was commercial and not residential *held,*

---

References for Points in Headnotes

[1] 58 Am Jur, Zoning § 21.
[2] 58 Am Jur, Zoning § 22.
[3] 58 Am Jur, Zoning § 232.
[5] 58 Am Jur, Zoning § 140.
[6] 58 Am Jur, Zoning §§ 33, 142.
[6] Zoning: Creation by statute or ordinance of restricted residence
    districts from which business buildings or multiple residences
    are excluded. 19 ALR 1395; 33 ALR 287; 38 ALR 1496; 43
    ALR 668; 54 ALR 1030; 86 ALR 659; 117 ALR 1117.
    Constitutionality of zoning based on size of commercial or
    industrial enterprises or units. 7 ALR2d 1007.
[8–10] 58 Am Jur, Zoning § 146 *et seq.*
[8–10] Validity and construction of zoning or building ordinance
    prohibiting or regulating subsequent alteration, addition, exten-
    sion, or substitution of existing buildings. 64 ALR 920.
    Zoning: Change in ownership of nonconforming business or use
    as affecting right to continuance thereof. 9 ALR2d 1039.
    Zoning: Changes, after adoption of zoning regulations, in re-
    spect of nonconforming existing use. 147 ALR 167.
    Right to resume nonconforming use after period of nonuse or
    of a different use from that in effect at or before the time of
    zoning. 18 ALR2d 725.

justified under the evidence presented in suit to enjoin defendant city from classifying plaintiff's property less liberally than for light manufacturing uses under zoning ordinance (Detroit Ordinance No 171-D).

5. SAME—ZONING ORDINANCE—DEPRECIATED VALUES.

Depreciated values are not a definite yardstick in determining the legality of the application of a zoning ordinance to a parcel of land although weight may be given thereto under proper circumstances.

6. SAME—ZONING—REASONABLENESS—EVIDENCE.

Zoning restriction of plaintiff's 2 lots to single residence purposes *held*, unreasonable and not permissible, under the circumstances, where it appears that neighboring area in 2 directions is devoted to business uses, land in a third direction is largely vacant, 2 nearby arterial highways were to be widened so as to render intervening land unsuitable for single residence use, plaintiff's land has been used for light manufacturing purposes for about 10 years and it is proposed to continue its use as headquarters for moving and storage business (Detroit Ordinance No 171-D).

7. SAME—ZONING ORDINANCE—CONSTITUTIONAL LAW—VALIDITY OF APPLICATION.

A party who assails the validity of an application of a municipal zoning ordinance to his own property need not question the legality of the entire ordinance.

8. SAME—ZONING ORDINANCES—NONCONFORMING USES.

A higher nonconforming use under a zoning ordinance is one not as objectionable as the former one, conforming to the permissible use to a greater degree than a lower nonconforming use.

9. SAME—CONTINUATION OF NONCONFORMING USES—PURPOSE.

The continuation of a nonconforming use under a zoning ordinance is for the purpose of avoiding the imposition of a hardship upon the owner of the property with a view to the gradual elimination of such nonconforming use.

10. SAME—ZONING ORDINANCE—MOVING AND STORAGE BUSINESS—REASONABLENESS.

Plaintiff whose property had long been used for light manufacturing purposes *held*, entitled to continue to conduct moving and storage business thereon, under the circumstances, where it appears his use was a higher nonconforming use than heretofore made, notwithstanding zoning ordi-

nance restricted use to single residences, since to deny plaintiff such right would be unreasonable (Detroit Ordinance No 171-D).

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 9, 1953. (Docket No. 43, Calendar No. 45,717.) Decided June 8, 1953.

Bill by Redford Moving & Storage Company, a Michigan corporation, against the City of Detroit to restrain enforcement of ordinance with reference to plaintiff's property. Decree for plaintiff. Defendant appeals. Affirmed.

*Wilfrid L. Burke* (*Bernard L. Walsh*, of counsel), for plaintiff.

*Paul T. Dwyer*, Corporation Counsel, and *Arthur L. Barkey*, Assistant Corporation Counsel, for defendant.

Carr, J. During the trial of this case in circuit court the parties entered into a stipulation as to certain material facts that were not in dispute. In December, 1940, the defendant city, by Ordinance No 171-D, zoned all property within the municipal limits into various classifications. Plaintiff corporation, by assignment, is the owner of a vendee's interest under a land contract for the sale and purchase of certain property described as lots 98 and 99, Frank Lee's subdivision of the city of Detroit. The lots in question, located on the west side of Lahser road approximately 135 feet south of McNichols road, a main-traveled thoroughfare, have a total width of 80 feet and a depth of 123.5 feet. Fifteen-foot alleys are located on the west and north of said property.

The ordinance referred to zoned plaintiff's lots for use for 1-family dwellings and certain other

designated noncommercial purposes. Within the immediate vicinity are properties devoted to nonconforming uses. Grand River avenue is distant, a so-called "long block," from plaintiff's property, lots contiguous thereto being zoned for business purposes. It is agreed that land north of McNichols road on Lahser is also zoned for commercial and business use. The 10 lots immediately south of lots 98 and 99 are vacant except for 2 frame dwellings located on the alley at the rear of said lots.

During the period from April, 1940, to August 15, 1942, Frank Pollock, operating under the name of Redford Millwork Company, used the buildings on what is now plaintiff's property for the manufacture of certain building and mill supplies. It is the claim of defendant that such operation was illegal, on the ground that no proper permit under the building code in force prior to the adoption of the present zoning ordinance had been granted. Beginning August 15, 1942, and continuing until December 1, 1949, the Tydings Engineering Company owned and occupied the lots in question in carrying on its business as a general heating contractor. It was engaged specifically in the manufacture and assembly of metal ducts for hot-air heating. In the course of its operation the Tydings Company used welding equipment, motors, machinery, and other equipment incidental to the carrying on of its business. It is admitted by defendant that such operation constituted a light manufacturing business, as classified by the zoning ordinance and referred to therein as an ML use.

Under date of July 7, 1948, the board of zoning appeals created by the ordinance issued to the Tydings Engineering Company a so-called permanent grant authorizing it to carry on its said business on the property. It is not disputed that the successors in ownership and occupancy to the Tydings Engi-

neering Company are entitled to the benefits granted by said permit, in effect authorizing the use of the property for an ML purpose. Under the provisions of the zoning ordinance all uses permitted in residential, business and commercial properties referred to as R–1, R–2, RM, RM–4, RMU, B–2, B–6 and C–6, are permissible under an ML classification. It is the claim of the defendant city, however, that such inclusion is not applicable to nonconforming uses.

On November 1, 1949, the Tydings Engineering Company conveyed its interest in the property to Charles Ligos, who subsequently conveyed to Ray Bolf. Ligos and Bolf each conducted a general moving and storage business. They successively made applications for permits specifically covering their business to the department of buildings and safety engineering of the city. Said applications were denied, appeals taken to the board of zoning appeals under the ordinance, and hearings held. In each instance the appeal board refused the permit. After acquiring the property from Bolf plaintiff did not petition for a permit to conduct a moving and storage business, but it is conceded that had it done so its application would have been denied. An attempt on plaintiff's part to have the property rezoned was denied by the common council on the recommendation of the city plan commission, such action being taken without notice to plaintiff. A request for a rehearing was also denied. Thereupon plaintiff instituted the present suit in equity seeking injunctive relief to prevent defendant from giving to plaintiff's property a classification less liberal than ML as defined in the ordinance and from limiting or attempting to limit plaintiff's use of the lots for residential purposes only as provided by said ordinance. On behalf of the city, answer was filed denying plaintiff's right to the relief sought.

A hearing was had at which both parties offered proofs with reference to the adaptability of plaintiff's lots for various uses. On behalf of plaintiff testimony was introduced tending to show that because of their nature and location the lots were much more suitable for business and commercial purposes than for residences, that the construction of homes thereon was not practicable, and that plaintiff would suffer serious loss if prevented from carrying on its business. Witnesses residing in the vicinity were produced by defendant, and voiced objection to the continuance of plaintiff's operations in the storage and cartage business because of the noise resulting therefrom and the operation of trucks upon the street and alleys contiguous to the property.

The trial judge came to the conclusion that plaintiff was entitled to relief and entered a decree providing therefor. An injunction was issued restraining the city "from enforcing Ordinance Number 171-D, so-called zoning ordinance of the city of Detroit, as to the property of the plaintiff, Redford Moving & Storage Company, a Michigan corporation, hereinbefore more particularly described, and from taking any action to classify said plaintiff's property in a class less liberal than ML as such classification is presently defined in aforesaid zoning ordinance, permanently." Defendant has appealed.

It will be noted that the injunctive relief granted by the trial court bars the city from taking steps to restrict plaintiff's use of its property to residential purposes as allowed under the classification R-1, and also from placing such property in a less favorable or more restricted classification than light manufacturing, ML. It is conceded that a zoning ordinance must be reasonable, and its reasonableness is the test of its legality. *City of North Muskegon* v. *Miller,* 249 Mich 52, 57; *Moreland* v. *Armstrong,* 297 Mich 32, 36. Each case of this character must be deter-

mined upon its own facts. The reasonableness of the exercise of the municipal power involved is always subject to judicial review. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728, 737 (149 ALR 1433). On behalf of appellant it is argued that to restrict plaintiff to. the use of the property for permitted residential purposes only would not violate its constitutional rights.

The record in the case fully justifies the conclusion of the trial judge that "the highest and best use of plaintiff's property was commercial and not residential." The situation with reference to property along Grand River avenue and on Lahser road north of McNichols road is significant. It is evident that the immediate neighborhood in which the' plaintiff's property is located is not favorably regarded for residential purposes. On the trial of the case the so-called "master plan" of the city of Detroit was offered in evidence and received without objection. Such plan contemplates the widening of Lahser road to 116 feet, which means taking off 25 feet on each side of the road, thereby reducing the depth of plaintiff's lots to 98.5 feet. One of defendant's witnesses admitted that such depth is not deemed desirable for a residential lot. The plan further discloses that McNichols road is to be widened to 200 feet, which would result in bringing plaintiff's property within 75 feet of that thoroughfare, thus rendering the intervening lots undesirable for homes.

That plaintiff's property is and will be worth much less for residential purposes than for business or commercial uses is not questioned. On behalf of appellant it is argued that such disparity in values may not properly be considered in determining the instant case. While depreciated values are not a definite yardstick in determining the legality of the application of a zoning ordinance to a parcel of land, nonetheless weight may be given thereto under

proper circumstances. *Ritenour* v. *Township of Dearborn,* 326 Mich 242; *Long* v. *City of Highland Park,* 329 Mich 146. Weighing all the facts in the instant case as disclosed by the record, we are in accord with the finding of the trial judge that restricting the use of plaintiff's property to the purposes contemplated by the classification under which it has been zoned would, as to such property, be unreasonable and, hence, not permissible. The situation here involved is not analogous to that in *Hammond.* v. *Bloomfield Hills Building Inspector,* 331 Mich 551, on which counsel for appellant rely.

It is further urged on behalf of the city that the court should not interfere with the discretion of the board of zoning appeals, and that plaintiff may not claim benefits under the ordinance and at the same time assail its validity. As above pointed out, however, the reasonableness of the application of a zoning ordinance to a particular parcel of land is subject to judicial review. In the instant case plaintiff does not question the legality of Ordinance 171–D in its entirety, but contends that the manner of application thereof to its property is unreasonable and unlawful. The trial judge, in deciding the controversy, so found, and we are in accord with such conclusion. *Long* v. *City of Highland Park, supra; Hitchman* v. *Township of Oakland,* 329 Mich 331.

As before noted, plaintiff's predecessor in occupancy and ownership of the lots in question obtained from the defendant a permanent grant of the right to conduct a light manufacturing business on the property, an ML classification under the ordinance. Admittedly plaintiff has succeeded to and now has the rights of the immediate grantee of the permit. The use to which plaintiff seeks to change, commercial in character, falls in the C–6 classification made by the ordinance. Such desired use is, in fact, under said ordinance, of higher rank than an ML use.

An analogous situation arose in *Palmer* v. *City of Detroit*, 306 Mich 449. The property there involved was in use, at the time the present zoning ordinance of the city became effective, for manufacturing purposes. Authority from the city was sought to enable the owner to increase the size of the building in order to allow additional space. The application was denied by the department of buildings and safety engineering of the city, and by the board of zoning appeals. Thereupon the manufacturing concern using the property procured larger quarters and moved thereto. The owner then rented the building to a cartage company for use in its business and applied to the proper municipal authorities for a permit covering the specific change in the nature of the operations conducted. Such application was denied, and the board of zoning appeals affirmed the refusal to allow the change. Mandamus proceedings were thereupon instituted in the circuit court of Wayne county and from the determination reached therein an appeal was taken to this Court. In deciding the issue in plaintiff's favor, it was said:

"The question is presented whether, if a substantial business or commercial building located in a district classified by a subsequent zoning ordinance to be used for residence purposes has been used for manufacturing, the use after the passage of the zoning ordinance may be changed to a higher nonconforming one notwithstanding the provisions of section 3.3 of the zoning ordinance? Must the use of such a building situated in a district classified as residential by the zoning ordinance be limited to the identical nonconforming use that it was being put to at the time that the ordinance was passed? May the building be used for almost the same purposes for which it was designed and built, but for a nonconforming use of a higher grade than the one it was used for when the zoning ordinance went into effect? A higher nonconforming use is one not as

objectionable as the former one. While it does not conform, it, however, does so in a greater degree than the use to which the property was formerly put when the zoning ordinance was adopted. No structural changes or additions of any kind are being asked for. No alterations of any kind that would prolong the life of the building are sought. The continuation of a nonconforming use under the zoning ordinance is for the purpose of avoiding the imposition of a hardship upon the owner of the property with a view to the gradual elimination of such nonconforming use. *Cole* v. *City of Battle Creek,* 298 Mich 98. What would amount to an immediate, not a gradual, elimination of such nonconforming use is insisted upon by defendant even though this would amount to the destruction of the use of property built long before the zoning ordinance went into effect and of the very use that now is being sought. No objection probably would or could be made were plaintiffs able to secure a tenant who would use the premises as a machine shop within the time set forth in the ordinance.

"A zoning ordinance must be reasonable, as reasonableness is the test of legality. Each zoning ordinance, as a rule, stands by itself and its reasonableness in each case must be judged by the circumstances thereof. *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31.

"Our attention has not been called to any cases, either in this State or any other jurisdictions, exactly similar to the instant one. Both parties cite cases of other jurisdictions but the facts or ordinances differ. Judging the case upon the facts, the zoning ordinance provides that the word 'use' means the purpose for which the land or buildings thereon are designed, arranged or intended to be occupied or used as well as that for which it is occupied and maintained. Plaintiff contends that the words 'any such nonconforming use' in paragraph (B) of section 3.3, hereinbefore quoted, refer generally to any such use and not to the identical nonconforming use at the

time that the ordinance went into effect. The real question is, whether the ordinance is reasonable in not permitting a higher grade nonconforming use and thus preventing total uselessness of plaintiff's property and the destruction of the large investment therein. It is our judgment that if the ordinance is construed so as to prevent such a use under the particular facts of the case, it is not reasonable, and that when it is sought to change the use of the property to substantially that for which the building is designed, a nonconforming use, but of a higher grade than the manufacture of metal products for 24 hours a day, and when the plaintiff further agrees that the building will not be used after 7 p.m. except under extraordinary circumstances, the refusal to issue the permit is so unreasonable in this particular case as to invoke the aid of the court."

The language quoted is well in point in the case at bar. To deny plaintiff the right to continue the use that it is now making of its property would be unreasonable, an improper application of the zoning ordinance, and a violation of plaintiff's constitutional rights. It is entitled to the relief sought.

The decree of the trial court is affirmed, with costs to plaintiff.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.