VILLAGE OF HOLLY v GROMAK

1. ZONING—NONCONFORMING USE—CHANGE IN USE—STATUTES.

Extended or expanded uses of land or structures exceeding the boundaries of an existing nonconforming use are unlawful uses that violate the statute governing nonconforming use; however, a lesser or diminishing nonconforming use is not only lawful, but proceeds toward the objectives of the statute (MCLA 125.583a; MSA 5.2933[1]).

2. ZONING—ORDINANCES—REASONABLENESS—CIRCUMSTANCES.

Zoning ordinances, as a rule, stand by themselves and the reasonableness of an ordinance must be judged by the circumstances of each case.

3. ZONING—NONCONFORMING USE—CHANGE IN USE—CIRCUMSTANCES.

A decision of whether to permit a proposed change in a nonconforming use must be made by viewing each situation in the light of all the surrounding facts and circumstances.

4. ZONING—NONCONFORMING USE—BOARDS OF APPEAL—COURTS— CHANGE IN USE—FACTORS CONSIDERED.

A zoning board of appeals and courts, in considering a proposed change in a nonconforming use, should consider, in addition to the use of the property at the time of the enactment of the zoning ordinance, such factors as prior interruptions in the nonconforming use and the reasons for them, expansions or contractions of the nonconforming use and the intent of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning §§ 196–199.

Zoning: Changes, repairs, or replacements in continuation of nonconforming use. 87 ALR2d 4.

[2] 82 Am Jur 2d, Zoning and Planning § 15.

[3] 82 Am Jur 2d, Zoning and Planning §§ 200, 201.

Plan: Requirement that zoning variances or exceptions be made in accordance with comprehensive plan, 40 ALR3d 372.

[4] 82 Am Jur 2d, Zoning and Planning § 234.

Zoning: Right to resume nonconforming use of premises after involuntary break in the continuity of nonconforming use caused by governmental activity. 56 ALR3d 138.

user in making such changes, whether there has been a partial or total abandonment of the nonconforming use, and the role of governmental agencies involved.

Appeal from Oakland, Frederick C. Ziem, J. Submitted December 14, 1977, at Detroit. (Docket No. 77-1886.) Decided February 7, 1978.

Complaint by the Village of Holly against Frank Gromak, Romila Development Corporation and William Eller to enjoin the defendants from violating the village's zoning ordinance. Counter complaint by Romila Development against the Village of Holly to enjoin the village from enforcing its zoning ordinance and for damages. Judgment for plaintiff. Defendants appeal. Affirmed.

*Albert H. Callahan,* for plaintiff.

*Campbell, Kurzman & Plunkett,* for defendants.

Before: BASHARA, P. J., and BEASLEY and D. E. HOLBROOK, JR., JJ.

BEASLEY, J. This case comes before this court on defendants-appellants' appeal as of right from a trial court judgment affirming denial by plaintiff's board of zoning appeals of an application to operate a so-called "convenience food" establishment in a structure on property that is the subject of a valid nonconforming use.

The record indicates that in 1945 or 1946 defendant Gromak put a war surplus Quonset hut on the premises and started a farm equipment sales and service business. Around 1955, as farming in the area lessened, he switched emphasis to heavy industrial equipment including bulldozers, cater-

pillars, back hoes and fork-lifts which continued until 1967 or 1968 when he ventured into the lawn, garden and outdoor power equipment sales and service business.

In 1970, plaintiff enacted a zoning ordinance which zoned the subject land R1C, a single-family residence classification. In 1973, defendant Gromak sold the premises on land contract to defendant Romila, but rented part of the premises back from the new purchaser and started slowly to phase out his business. Defendant Romila subdivided part of the property, built houses on two parcels and rented the front part of the Quonset hut to defendant Bennett Insulation Company for an insulation, storage and sales business.

Plaintiff started this suit to oust the insulation operation from the premises and defendant Bennett Insulation Company counter-claimed. While the case was pending, defendant Romila, desiring to use part of the property for a so-called convenience food establishment, petitioned the board of zoning appeals for permission to change the nonconforming use, if no structural alterations were made and if the proposed use was equally appropriate or more appropriate to the district than the existing nonconforming use. This request was made pursuant to § 4.5(c) of plaintiff's zoning ordinance which provides as follows:

"c) If no structural alterations are made, any nonconforming use of a structure, or structure and premises, may as a special exception be changed to another nonconforming use provided that the Board of Appeals, either by general rule or by making findings in the specific case, shall find that the proposed use is equally appropriate or more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Appeals may require appropriate condi-

tions and safeguards in accord with the provisions of this ordinance * * * ."[1]

Extensive hearings were held in October 1975 and May 1976.

The board of zoning appeals denied the petitions, concluding that a convenience food store was less appropriate to the district than the then-existing use of the part-time sales and service of lawn and garden equipment. Defendants then amended their claims in this lawsuit, seeking superintending control in the circuit court. After trial, the trial court, in a carefully prepared opinion, concluded that although the nonconforming use had not been abandoned, the decision of the board of zoning appeals denying permission for the changed nonconforming use was supported by competent and material evidence and, thus, met the constitutional test under Article 6, § 28 of the 1963 Michigan Constitution.

On appeal, as in the trial court, defendants-appellants argue that the board of zoning appeals proceeded on an erroneous conception of the law, namely, that it looked to the use of the subject premises as it existed at the time of filing of the petition, which appears to have been servicing of lawnmowers and other lawn equipment on a part-time basis by a semi-retired owner. Appellants say that the board of zoning appeals should have looked to the use on the effective date of the zoning ordinance in 1970 when a busy retail sales

---

[1] The statute authorizing § 4.5(c) provides as follows:

"The lawful use of land or a structure exactly as such existed at the time of the enactment of the ordinance affecting them, may be continued, except as hereinafter provided, although such use or structure does not conform with the provisions of such ordinance. The legislative body may in its discretion provide by ordinance for the resumption, restoration, reconstruction, extension or substitution of non-conforming uses or structures upon such terms and conditions as may be provided in the ordinance." MCLA 125.583a; MSA 5.2933(1).

and service lawnmower and equipment business was in operation. The trial judge took into consideration that the 1973 land contract purchaser built two residential structures on the premises and altered the use to put an insulation company in part of the Quonset hut. After noting that the case involved a close question, with respect to defendants-appellants' chief claim, the trial judge said, among other things, as follows:

" * * * in view of the fact that the present lawn and garden equipment business has become a limited operation run by a person who is in a semi-retired or work as he pleases; even though the Court has made a finding with the nonconforming use, it has not been abandoned; nevertheless, in view of the wording of the ordinance which speaks of the existing nonconforming use, this Court is of the opinion that the Board of Appeals had the right to compare the proposed use to the use as it existed in the last three or four years.

"This Court is not ruling that the Defendants couldn't go back to the use of the prior years, because that is not before the Court. But this Court is of the opinion that the Board did have the right to compare the proposed use to the use as it had existed in the last three or four years."

Appellants cite *City of Hillsdale v Hillsdale Iron & Metal Co, Inc,* 358 Mich 377; 100 NW2d 467 (1960), as authority to support the proposition that absent abandonment, the basis for comparison with the proposed use is the lawful use exactly as such existed at the time of enactment of the ordinance. In *Hillsdale,* at the date of adoption of the zoning ordinance, defendant's business was "largely storage of scrap metal", 358 Mich at 385. The court found extension of use *after* the effective date of the ordinance. Defendant claimed that the use was expanded because mechanization and

modernization were necessary to meet competition. The trial court enjoined the use and maintenance of machinery, equipment and buildings placed on the premises after effective date of the ordinance. Consequently, as distinguished from the within case where we have abatement or reduction of a nonconforming use, in *Hillsdale* there was an expansion or broadening of a nonconforming use. Defendant also cites *Dearden v Detroit,* 70 Mich App 163; 245 NW2d 700 (1976), where, from 1938 through 1971, the Roman Catholic Archdiocese of Detroit owned and used the subject building as a convent. In 1940, defendant city adopted a zoning ordinance under which the area became R2 (two family); thus, the convent became a nonconforming use. In 1971, plaintiff sought to lease to the Michigan Department of Corrections the premises for use in rehabilitating convicts. The zoning ordinance did not specifically exclude governmental use. This Court held that the nonconforming use must be substantially the same size and same essential nature as the use existing at the time of passage of a valid zoning ordinance, citing *White Lake Twp v Lustig,* 10 Mich App 665; 160 NW2d 353 (1968). This Court held that the proposed use as a correctional facility was an expansion of the nonconforming use, that housing is only one aspect of the proposed use by the Department of Corrections and, therefore, affirmed the denial by defendant of the proposed use.

In *Dearden,* the nonconforming use as a convent appears to have remained constant while the proposed new use would be a clear extension of the nonconforming use. Thus, both *Hillsdale* and *Dearden* are distinguishable from the within case. Extended or expanded uses exceeding the boundaries of an existing nonconforming use are unlawful

uses that violate the nonconforming use statute. On the other hand, lesser or diminishing nonconforming uses are not only lawful, but proceed toward the objectives of the nonconforming use statute. The trial court did not ignore the use existing in 1970 at the date of enactment of the zoning ordinance, but also gave consideration to the actual use of the subject premises thereafter. Just as each zoning ordinance, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each case,[2] each situation where a decision must be made whether to permit a proposed change in a nonconforming use must be viewed in the light of all the surrounding facts and circumstances.

It would be neither practical nor desirable to attempt to formulate a rule that described the weight to be given to each fact and circumstance.

While the use of the property at the time of enactment of the ordinance is a proper starting place in analysis of nonconforming use questions, there are additional factors that must be considered. To be considered are such factors as prior interruptions in the nonconforming use and the reasons for them, expansions or contractions of the nonconforming use and the intent of the user in making such changes, whether there has been a partial or total abandonment of the nonconforming use and the role of governmental agencies involved. Appellants' argument that the only factor properly considered is the nonconforming use existing when the ordinance is adopted would be a sterile, limiting approach that we do not care to embrace. Under these circumstances, we do not find that the trial court clearly erred in its inter-

---

[2] *Redford Moving & Storage Co v Detroit,* 336 Mich 702, 711; 58 NW2d 812 (1953), citing *Pere Marquette R Co v Muskegon Township Board,* 298 Mich 31; 298 NW 393 (1941).

pretation of the law. Each case must be decided upon its own peculiar circumstances. In this case, the trial court's application of the law to the facts was not clearly in error; there was evidence to support the findings of the board of zoning appeals as the trial court found.

Affirmed, with costs.