PETERSON v CITY OF LAPEER

Docket No. 48991. Submitted February 3, 1981, at Lansing.—Decided May 5, 1981.

Plaintiffs, Elgin Peterson and David Peterson, are the owners of real property known as 127 Pope Street in the City of Lapeer, the dimensions of which are 32.1 feet wide by 110 feet deep on the east and 111 feet deep on the west. The rear of the property abuts plaintiffs' new and used car and truck dealership. Plaintiffs purchased the lot on August 2, 1973. At that time, there was a one-family residence on the lot, although it had been represented to plaintiffs by city officials that all but approximately the northern 13 feet of the lot was, or would shortly be, zoned for business. On September 20, 1973, a new zoning ordinance became effective for the City of Lapeer which, in conformance with the statement to plaintiffs, divided plaintiffs' lot, and all property on that same block, into part business and part residential uses. The dividing line ran approximately 23 feet south of the north line and parallel to Pope Street. In early 1974, plaintiffs tore down the residential house at 127 Pope Street and then, in August, 1974, fenced and blacktopped the lot for use as parking for some 12 to 14 cars and for ingress and egress to plaintiffs' adjoining dealership on Genesee Street. At that time, at least the south 87.5 feet of the subject lot was zoned for business which permitted these uses, but no certificate of occupancy for a change of use was either requested or obtained. In December, 1974, Kors Van Mourik and others (intervening defendants in the present suit) requested a hearing. The zoning board of appeals held that the boundary between the multiple residential district and the business district was a line 23 feet off Pope Street. Thus, under this

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 178.

[2] 46 Am Jur 2d, Judgments § 415.

47 Am Jur 2d, Judgments §§ 1091, 1092.

Modern views of state courts as to whether consent judgment is entitled to res judiciata or collateral estoppel effect. 91 ALR3d 1170.

holding, the north 23 feet of the lot was zoned multiple residential, while the south 87.5 feet of the lot was zoned business. In May, 1975, intervening defendants brought suit against the City of Lapeer, seeking judicial review of the decision of the zoning board of appeals. While that suit was pending, the zoning ordinance was amended so that the subject lot was zoned entirely multiple residential. A consent judgment was entered, setting aside the zoning board of appeals decision and identifying the zoning boundary between the multiple residential and business districts as a line at the rear of the subject lot, the effect being to zone the subject lot entirely multiple residential. Subsequently, plaintiffs attempted to intervene in that action in which consent judgment was entered, but their petition to intervene was denied. Plaintiffs also applied for a variance to authorize parking of automobiles on the subject lot, which request was denied by the zoning board of appeals. Plaintiffs then filed suit in the Lapeer Circuit Court against the City of Lapeer and its zoning board of appeals. Van Mourik and others intervened. The court, Martin E. Clements, J., entered judgment for plaintiffs, finding a valid nonconforming use for parking and storage of automobiles for sale respecting the south 87.5 feet, holding that multiple residential zoning of the north 23 feet is unconstitutional and confiscatory, and enjoining the city from interfering with plaintiffs' use of the property for parking and storage of automobiles. Intervening defendants appeal. *Held:*

1. The trial court was not clearly in error in concluding that the south 87.5 feet of the property was lawfully zoned for business shortly after being purchased by plaintiffs.

2. Plaintiffs' use constituted a valid nonconforming use as of the time of the 1976 amendment.

3. The consent judgment, to which plaintiffs were not parties, may not defeat plaintiffs' lawfully established nonconforming use of the property.

4. The trial court's finding that permits the north 23 feet to be used for business purposes is not clearly erroneous.

Affirmed.

1. ZONING — NONCONFORMING PRIOR USE.

A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner in which it was used prior to the adoption of a zoning ordinance; though the ordinance be reasonable, it cannot operate to oust the property owner of his vested right.

2. JUDGMENTS — CONSENT JUDGMENTS — COLLATERAL ESTOPPEL.

    Collateral estoppel is a variant of res judicata which prohibits parties from relitigating issues which have previously been decided between them, but only as to those issues which were actually and necessarily adjudicated; therefore, consent judgments cannot be given collateral estoppel effect because the parties have not litigated the matters put in issue, they have merely settled and the issues involved have not been adjudicated, unless the parties have reflected in the consent judgment that it is to bind them on certain issues of fact.

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.,* for plaintiffs.

*Don P. LeDuc,* for intervening defendants.

Before: DANHOF, C.J., and R. M. MAHER and BEASLEY, JJ.

BEASLEY, J. Plaintiffs own real property fronting on and known as 127 Pope Street, in the City of Lapeer, the dimensions of which are 32.1 feet wide by 110 feet deep on the east and 111 feet deep on the west. The rear of the property abuts plaintiffs' new and used car and truck dealership. After a nonjury trial, judgment was entered holding (1) a valid nonconforming use for parking and storage of automobiles for sale respecting the south 87.5 feet, (2) multiple residential zoning of the north 23 feet is unconstitutional and confiscatory, and (3) enjoining the city from interfering with plaintiffs' use of the property for parking and storage of automobiles.

Intervening defendants, who will also be referred to as defendants in this opinion and who own adjoining properties, appeal as of right.[1]

Plaintiffs purchased the lot on August 2, 1973. At that time, there was a one-family residence on

---

[1] Defendant City of Lapeer has not appealed.

the lot, although it had been represented to plaintiffs by city officials that all but approximately the northern 13 feet of the lot was, or would shortly be, zoned for business. On September 20, 1973, a new zoning ordinance became effective for the City of Lapeer which, in conformance with the statement to plaintiffs, divided plaintiffs' lot, and all property on that same block, into part business and part residential uses. The dividng line ran approximately 23 feet south of the north line and parallel to Pope Street.[2]

In early 1974, pursuant to permission given, plaintiffs tore down the residential house at 127 Pope Street and then, in August, 1974, fenced and blacktopped the lot preparatory to using it for parking of some 12 to 14 cars and for ingress and egress to plaintiffs' adjoining dealership on Genesee Street. At that time, at least the south 87.5 feet of the subject lot was zoned for business which permitted these uses, but no certificate of occupancy for a change of use was either requested or obtained.

In December, 1974, after a hearing requested by intervening defendants, the zoning board of appeals held that the boundary between the multiple residential district and the business district was a line 23 feet off Pope Street. Thus, under this holding, the north 23 feet of the lot was zoned multiple residential, while the south 87.5 feet of the lot was zoned business.

In may, 1975, intervening defendants brought suit against the City of Lapeer, seeking judicial review of the decision of the zoning board of appeals. While that suit against the city was pending, on June 7, 1976, the zoning ordinance was

[2] There is no explanation in the record why plaintiffs' witness said 13 feet rather than the 23 feet specified in the zoning ordinance.

amended so that the subject lot was entirely zoned multiple residential. On July 26, 1977, a consent judgment was entered in the law suit filed by intervening defendants against the City of Lapeer. This consent judgment set aside the zoning board of appeals decision of December 3, 1974, and identified the zoning boundary between the multiple residential and business districts as a line at the rear of the subject lot, the effect being to zone the subject lot entirely multiple residential.

Subsequently, in August, 1977, plaintiffs attempted to intervene in that action in which consent judgment was entered, but their petition to intervene was denied on October 17, 1977.

Also on October 17, 1977, plaintiffs applied for a variance for the property at 127 Pope Street to authorize parking of automobiles on the subject lot, which request for variance was denied by the zoning board of appeals on December 1, 1977. Plaintiffs then filed the within law suit and obtained the successful result indicated.

On appeal, intervening defendants claim that the trial court erred in finding a lawful nonconforming use because they say that when plaintiffs purchased the property it was used for residential purposes and, on tearing down the residential structure, plaintiffs did not obtain a certificate of occupancy, or other form of permission, to change the use from residential to commercial, that is, blacktopping the lot, erecting a fence and using it to store and display motor vehicles and to provide access to their new and used car business.

Plaintiffs disagree, saying that the new zoning ordinance, adopted on September 20, 1973, made it clear that the south 87.5 feet of the subject lot was zoned for business uses.

Plaintiffs also claim that the undisputed testi-

mony is that when, in 1974, they tore down the old residence, blacktopped and fenced the lot and established it as a parking lot accessory to their business, no question of zoning was raised by anyone, although plaintiffs' intended use was clear to the city.

Plaintiffs also say that in the fall of 1974 defendants sought to have the zoning board of appeals interpret the zoning map so as to draw the line between the multiple residential and business zoning to the rear of plaintiffs' lot, rather than 23 feet from the front. Plaintiffs say that the zoning board of appeals declined defendants' request and, in their December 3, 1974, determination, confirmed the fact that the lot was zoned B-1. Plaintiffs say that it was not until June, 1976, that the city rezoned the entire lot to multiple residential.

In finding a valid, nonconforming use, the trial court held that plaintiffs believed that the subject lot was substantially zoned for, or about to be zoned for, business when they bought it, that they would not have purchased it if it had not been represented to them to be usable business property, and that there was sufficient evidence upon which they could base a belief that the property was zoned, or about to be zoned, for business. The trial court noted that plaintiffs requested and obtained permission to tear down the residential building on the premises and went about paving the lot and using it for commercial parking openly, and that these facts were apparently well known to the city. The trial court concluded that, when the plaintiffs acquired the subject lot in 1973, they had a right to assume they could use it for business purposes, and that they have used the property continuously for parking in conjunction with the dealership.

The 1973 zoning ordinance defines nonconforming use in Article 7.02(B) as follows:

*"Nonconforming Use:* A use which lawfully occupied or land at the effective date of this Ordinance or amendments thereto, and that does not conform to the use regulations of the district in which it is located."

We hold that the trial court was not clearly in error in concluding that the south 87.5 feet of the subject lot was lawfully zoned for business by September 20, 1973, shortly after being purchased by plaintiffs. We find that this conclusion was substantially upheld by the zoning board of appeals when that body determined, on December 3, 1974, that the rest of the subject lot, other than the north 23 feet, was zoned for business use.

We further find that, since plaintiffs' use of the subject real property as a parking lot was already in existence at the time of the July, 1976, amendment to the zoning ordinance, the essential requirement for a finding of a nonconforming use was met. The enabling statute for nonconforming uses in home rule cities provides:

"The lawful use of land or a structure exactly as the land or structure existed at the time of the enactment of the ordinance affecting that land or structure, may be continued, except as otherwise provided in this act, although that use or structure does not conform with the ordinance."[3]

In *Dusdal v City of Warren,*[4] the Supreme Court said:

---

[3] MCL 125.583a; MSA 5.2933(1).

[4] 387 Mich 354, 359-360; 196 NW2d 778 (1972). See, also, *Norton Shores v Carr,* 81 Mich App 715; 265 NW2d 802 (1978), *Village of Holly v Gromak,* 81 Mich App 241; 265 NW2d 107 (1978).

"A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance. Though the ordinance be reasonable, it cannot operate to oust the property owner of his vested right."

Since we conclude that the city zoned the south 87.5 feet of the subject lot for a business use after plaintiffs acquired the property, defendants' technical objection that plaintiffs failed to obtain an explicit permission by way of a certificate of occupancy to use as a parking lot cannot be used as a basis to defeat a lawful, nonconforming use.[5]

As indicated, the south 87.5 feet of plaintiffs' property was zoned for business purposes at the time plaintiffs commenced to so use it. The use to which plaintiffs have put the property is within the business classification established in the ordinance.

As indicated, eventually a consent judgment was entered in another law suit between intervening defendants and the City of Lapeer which set aside the line between multiple residential use and business uses established in the zoning ordinance and confirmed by the board of zoning appeals after the December, 1974, hearing and establishd a new line at the rear of the subject lot to distinguish between business use and multiple residential use. Plaintiffs were not a party to the law suit in which the consent judgment was entered.

In *American Mutual Liability Ins Co v Michigan Mutual Liability Co,*[6] we said:

"First, collateral estoppel rules do not require that a

---

[5] *DeMull v City of Lowell,* 368 Mich 242; 118 NW2d 232 (1962), and *Dingeman Advertising, Inc v Algoma Twp,* 393 Mich 89; 223 NW2d 689 (1974).

[6] 64 Mich App 315, 327; 235 NW2d 769 (1975).

consent judgment bind a party to facts which were originally in issue in the action that was settled. A consent judgment reflects primarily the agreement of the parties. * * * The action of the trial judge in signing a judgment based thereon is ministerial only. The parties have not litigated the matters put in issue, they have settled. The trial judge has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters." (Footnotes and citations omitted.)

The consent judgment entered into between the City of Lapeer and defendants is not binding on these plaintiffs or upon the trial court.[7] The consent judgment did not operate to defeat plaintiffs' lawfully established nonconforming use.

We are then left with the north 23 feet of the subject lot. In this connection, the trial judge ruled as follows:

"I think it should also be mentioned that although I don't determine that it is an unconstitutional zoning ordinance, it certainly is going to be difficult for anybody to build anything under the present zoning having a lot that is economically practical, it may not be impossible to build a single family dwelling but I'm satisfied from the testimony of Mr. Whitman and indeed the testimony of Mr. Lonsberry as well, that there is no reasonable way that anyone can build either a residential multiple R-2 or R-1 on the lot in question, with it's twenty-three foot width, price is not the only alternative but I'm satisifed as Mr. Whitman indicated that financing would be very difficult, that if it were built it would be to sell and that the present owner, Mr. Peterson, because of his investment todate [sic], would have no possible way of building anything that would be able to be sold where he could make a profit at it."

"* * * I think the neighborhood is reasonably well kept however in this area, one side of the lot in question is presently a large building now that Mr. McAr-

---

[7] *Hibbard v Hibbard,* 27 Mich App 112; 183 NW2d 358 (1970).

thur owns and rents out to a number of people. On the other side is the single residence of Mr. LeDuc. Both of these places that I just mentioned do border on the rear of Mr. Peterson's present business property. I do not think that lot six is going to have such a diminution of value of the property in that area that the parties would be greatly affected by the continuation of the present parking lot in question on lot six. I find that significant, that one of the individuals, Mr. McArthur who is an owner in the area, that if he could buy the property in question he would use it for a parking lot for his own tennants *[sic]* and now it may be that as a tennant *[sic]* and could legally under the present zoning use that if he bought that for parking but if that's true, at least it's an indication that in this particular area that the parking of the cars that the plaintiff is doing is something that is accepted to some extent as a reasonable use.

"Now, I admit that some off street parking by the tennants *[sic]* in the homes might be somewhat different than parking for used cars but I have seen the dimensions of this particular lot in question and it seems to me that there would not be the amount of traffic generated out of such a size lot, when there is indeed a front exit as well as rear exit. One to Genesee Street, the other to Pope Street. It also seems it is the type of business that does not operate in the late evening and probably not on weekends as well, although that's a guess on my part."

We note that it would seem impossible under existing building codes to use a parcel 32.1 feet wide by 23 feet deep for residential purposes, particularly while the rear adjoining 87.5 feet was being actively used for business purposes. Under the circumstances of this case, we decline to find the trial court's findings clearly erroneous and we, therefore, affirm the trial court's finding that permits the north 23 feet to be used for business purposes.

In summary, when plaintiffs acquired the sub-

ject real property, or very soon thereafter, it was zoned part business (the south 87.5 feet) and part multiple residential (the north 23 feet), and plaintiffs used the entire lot for parking in conjunction with the automobile dealership, which was a business use after August, 1974.

The property was not rezoned so as to zone the entire lot multiple residential until June 7, 1976. On that date, plaintiffs had established an in-place, ongoing, lawful business use. After the rezoning of June 7, 1976, plaintiffs' business use became a nonconforming use lawful under the authority and for the reasons herein indicated.

Affirmed. No costs, a public question being involved.