KOPIETZ v ZONING BOARD OF APPEALS FOR THE CITY OF
THE VILLAGE OF CLARKSTON

Docket No. 168097. Submitted February 8, 1995, at Lansing. Decided
June 27, 1995, at 9:15 A.M.

    Floyd C. and Joan M. Kopietz filed a petition with the Zoning
Board of Appeals for the City of the Village of Clarkston,
seeking to use their building, which had been used as a funeral
home, as a bed and breakfast establishment. Following a public
hearing, the board denied the petition on the basis that the bed
and breakfast establishment would constitute a commercial use
in an existing residential district and the proposed nonconforming use was not more appropriate than the previous nonconforming use. The petitioners appealed, and the Oakland Circuit
Court, Edward Sosnick, J., affirmed the board's decision but
remanded the matter to the board to allow it to detail the
specific reasons for its findings. On remand, the board made
findings of fact and gave specific reasons why the proposed bed
and breakfast use is not more appropriate than the previous
nonconforming use. The petitioners appealed.

    *The Court of Appeals held:*

    1. The zoning ordinance involved in this matter, City of the
Village of Clarkston Zoning Ordinance, § 910.04(3), does not
delegate legislative power in violation of the constitution. It
provides reasonably precise standards to guide the board in the
performance of its delegated legislative tasks. The standards
prescribed for guidance are as reasonably precise as the subject
matter requires or permits. The fact that each characteristic to
be considered is not described in the ordinance is not fatal. The
ordinance is constitutional.

    2. The board's decision was an unreasonable exercise of
discretion. The board failed to decide, pursuant to the terms of
the ordinance, whether the proposed nonconforming use is
more appropriate than the former nonconforming use. The

REFERENCES

Am Jur 2d, Administrative Law § 61; Municipal Corporations,
Counties, and Other Political Subdivisions §§ 381, 382; Zoning
and Planning §§ 57, 67, 652, 660.

See ALR Index under Administrative Law; Due Process; Municipal
Corporations; Presumptions and Burden of Proof; Zoning.

ordinance properly prohibits the enlargement, expansion, or extension of nonconforming uses but also provides for the diminution of nonconforming uses without requiring cessation. Not every change in a nonconforming use constitutes an extension of a prior nonconforming use. When the proposed use does not expand or extend the nonconformity, the property owner or the owner's successors may continue the nonconforming use.

3. Sections 910.01 and 910.04(3) of the city's ordinances do not conflict. Section 910.04(3) explains the city's specific process for its stated public policy, contained in § 910.01, of gradually phasing out nonconforming uses.

4. The circuit court erred in concluding that the board is not required to grant a petition to change a nonconforming use in cases where it finds the proposed use would diminish nonconformity.

5. The petitioners' argument that the board's decision had the effect of totally prohibiting a bed and breakfast land use within the city is flawed because, to make such a showing, the petitioners must demonstrate the need for the land use in the city or surrounding area and they failed to do so in this case.

Reversed and remanded.

1. MUNICIPAL CORPORATIONS — ORDINANCES — PRESUMPTIONS.

An ordinance is presumed to be constitutionally valid; a party attacking an ordinance as unconstitutional bears the burden of proving it is constitutionally infirm.

2. ADMINISTRATIVE LAW — DUE PROCESS — LEGISLATIVE TASKS.

Due process necessitates the existence of standards as reasonably precise as the subject matter requires or permits to be utilized by administrative agencies in the performance of delegated legislative tasks.

3. ZONING — NONCONFORMING USES.

A zoning ordinance may place a limited restriction on a property owner's rights by preventing the expansion of a nonconforming use; an ordinance requiring an immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained; a municipal ordinance may prohibit the enlargement, expansion, or extension of nonconforming uses and also provide for the diminution of nonconforming uses without requiring cessation; when the proposed use does not expand or extend the nonconformity, the property owner or the owner's successors may continue the nonconforming use (MCL 125.583a[2]; MSA 5.2933[1][2]).

4. ZONING — MUNICIPAL CORPORATIONS — EXCLUSIONARY ZONING.

>  A zoning ordinance or zoning decision can not totally prohibit the establishment of a land use within a city where there is a demonstrated need for the land use in the city or the surrounding area.

*Booth, Patterson, Lee, Need & Adkison, P.C.* (by *Phillip G. Adkison*), for the petitioners.

*Thomas J. Ryan, P.C.* (by *Thomas J. Ryan*), for the Zoning Board of Appeals for the City of the Village of Clarkston and the City of the Village of Clarkston.

Before: FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ.

TAYLOR, J. Petitioners appeal as of right an order of the Oakland Circuit Court affirming a decision of the Zoning Board of Appeals for the City of the Village of Clarkston (ZBA) to deny petitioners' request to change an existing funeral home into a bed and breakfast establishment. We reverse and remand.

This appeal is the second case involving petitioners and the City of the Village of Clarkston concerning the City of the Village of Clarkston Construction, Development, and Land Use Code (hereinafter the ordinance). Petitioners' first petition involved structural alterations to the building in question. The ZBA denied the petition and petitioners appealed that denial to the Oakland Circuit Court. While that case was pending before Judge Hilda Gage, petitioners filed a second petition requesting a change in the nonconforming use with no structural alterations. Following a June 25, 1992, public hearing regarding the issue, the ZBA denied the petition because the proposed bed and breakfast would constitute a commercial use

in an existing residential district and the ZBA felt that the proposed nonconforming use was not more appropriate than the previous nonconforming use. The ZBA reasoned that denial of the petition was supported by the fact that the building was originally a single-family home, the City of the Village of Clarkston City Council turned down another bed and breakfast request across the street, and the city council did not approve a bed and breakfast amendment of the zoning ordinance.

Petitioners also appealed the denial of their second petition to the Oakland Circuit Court. This appeal was assigned to Judge Edward Sosnick. In an opinion dated June 23, 1993, Judge Sosnick affirmed the decision of the ZBA, but remanded to the ZBA to detail specific reasons for the ZBA's findings. On August 20, 1993, Judge Robert C. Anderson, acting for Judge Sosnick, entered an order implementing the court's opinion of June 23, 1993. With regard to the companion matter pending before Judge Gage, the parties have not informed this Court of the status of that case, but we note from respondents' exhibits that Judge Gage must have also remanded to the ZBA for further factfinding because on November 23, 1993, the ZBA addressed both remands and made findings of fact and gave specific reasons why the proposed bed and breakfast use is not more appropriate than the previous nonconforming use.

In denying the petitions, the ZBA found that the city ordinance is in agreement with the public policy of the State of Michigan to allow nonconforming uses to continue but not to encourage their survival. Pursuant to the order on remand, the ZBA made six specific findings regarding the inappropriateness of the proposed bed and breakfast use. First, the ZBA reasoned that the city would be taking advantage of the opportunity to

bring this property into conformance as a residentially zoned use. Second, that there was no need for an expansion of commercial property in the residentially zoned district. Third, that to allow the nonconforming bed and breakfast would be contrary to the goal of maintaining the historical and residential character of this area. Fourth, that the city did nothing to cause the prior use as a funeral home to cease to exist and the city was within its rights to ask that the use be consistent with the current zoning. Fifth, that the city council had considered this issue and had decided not to locate bed and breakfast establishments in residential zones. Sixth, that, on July 16, 1973, a signed agreement had been entered into with the city providing that the use of the property would revert to a single-family residence when it was no longer used as a funeral home.[1]

This appeal deals only with petitioners' second petition, which is distinguished from the first because no structural alterations were sought. In considering the merits of this appeal, we will consider the reasons given by the ZBA at both the June 25, 1992, and the November 23, 1993, ZBA meetings.

Petitioners argue that the Clarkston zoning ordinance is an unconstitutional delegation of legislative power because it does not provide reasonably precise standards to guide the ZBA in the performance of its delegated legislative tasks. We disagree.

An ordinance is presumed to be constitutionally valid and the party attacking it bears the burden of proving it is constitutionally infirm. *Cryderman v Birmingham,* 171 Mich App 15, 22-23; 429 NW2d 625 (1988). Further, due process necessitates the

---

[1] The parties have chosen not to raise the issue whether a valid contract existed. Accordingly, we will not address this issue further.

existence of standards as reasonably precise as the subject matter requires or permits to be utilized by administrative agencies in the performance of delegated legislative tasks. *Adkins v Dep't of Civil Service,* 140 Mich App 202, 213-214; 362 NW2d 919 (1985). A purpose of this requirement is to close the door to favoritism, discrimination, and arbitrary uncontrolled discretion on the part of administrative agencies, and to provide adequate protection to the interest of those affected. *Id.* at 213.

The ordinance at issue in this case provides:

> If no structural alterations are made, any nonconforming use of a structure, or structure and premises, may be changed to another nonconforming use provided that *the Board of Appeals, by making findings in the specified case, shall find that the proposed use is more appropriate to the district than the existing nonconforming use.* For any such change, the Board of Appeals may require appropriate conditions and safeguards in accord with the purposes and intent of this ordinance. [City of the Village of Clarkston Zoning Ordinance, § 910.04(3) (emphasis added).]

Petitioners contend that the ordinance lacks standards to guide the ZBA in determining whether a proposed use is "more appropriate to the district" than the use it will replace. However, we find that "the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits." *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956). Under § 910.04(3), the ZBA is required to make a disinterested determination whether the proposed use is more appropriate to the district than the existing nonconforming use. In this case, the specific inquiry would be whether use as a bed and breakfast is closer to the desired

residential use than is the former use as a funeral home. In making this determination, the ZBA would look to the characteristic uses of a funeral home, the characteristic uses of a bed and breakfast, and compare these with the characteristic uses of a residential home. If use as a bed and breakfast is determined to be closer to the desired residential use, then it is a move "up the use chain" and would satisfy the ordinance.

The fact that each characteristic to be considered is not described in the ordinance is not fatal because the "more appropriate" standard gives adequate guidance for impartial, objective, decision making. As this Court explained in *Village of Holly v Gromak,* 81 Mich App 241; 265 NW2d 107 (1978), in discussing an ordinance very similar to the Clarkston ordinance, it would be impractical to attempt to formulate a rule that describes the weight to be given to each fact in all circumstances. *Id.* at 247. The Clarkston ordinance establishes standards to guide the ZBA's determination that are as precise as the subject matter permits. When these standards are properly applied, they are capable of producing principled, focused, evenhanded decisions by the administrative agency. Accordingly, we conclude that the ordinance passes constitutional muster. *Adkins, supra; Osius, supra.*

Having concluded that the standards in the ordinance are sufficient, we must next consider whether in the application of these standards the decision of the ZBA was supported by competent, material, and substantial evidence on the record. Petitioners argue that the evidence did not reach that plane and that, accordingly, the ZBA decision was an unreasonable exercise of discretion. We agree.

Pursuant to the clear terms of the ordinance,

the ZBA should have decided whether the proposed nonconforming use, the bed and breakfast, moves in the direction of diminishing nonconformity. The ZBA did not employ this analysis on either occasion it considered petitioners' petition. Rather, the ZBA considered factors that were, in large part, irrelevant. For example, the ZBA improperly considered that, before zoning, the building had originally been a single-family home, and ignored the fact that the building was used as a funeral home when zoning was enacted in 1973.[2] The ZBA also improperly considered that the city council had decided not to locate another bed and breakfast in that residential zone, and finally, that the ZBA was not disposed to locating commercial property in this area. While the ZBA can consider many factors in its decision regarding the appropriateness of a proposed nonconforming use, its endeavor cannot descend into a discriminatory exercise that loses sight of the lodestar for the ZBA decision-making process; namely, whether the new use is more appropriate. As the above examples indicate, this is exactly what happened in this case.

Interestingly, respondents' arguments on appeal all but acknowledge that the ZBA did not comply with the analysis requirements of § 910.04(3). In fact, respondents unapologetically assert no need to do so, citing the public policy statements in their ordinance.[3] They have argued before this

[2] From its construction in 1862 until 1915, the building was used as a single-family home. In 1915, the building was converted to a funeral home and was used for this purpose from 1915 to 1992. The building was used as a funeral home when the zoning ordinance was enacted in 1973.

[3] In support of their position, respondents cite § 910.01 of the ordinance, which provides:

It is the intent of this ordinance to permit legal non-conforming lots, structures or uses to continue until they are removed, but not to encourage their survival. [City of the Village of Clarkston Zoning Ordinance, § 910.01.]

Court: "[T]he ZBA had within its power and discretion the ability to discontinue the nonconformity completely. The zoning board of appeals was well within its legal rights to eliminate the nonconformity when presented with the opportunity to do so." As is apparent, the import of this position is that the ZBA need not consider, in any serious fashion, the "more appropriate" requirements of the ordinance because public policy motivations give them the authority to ignore the requirements of § 910.04(3) and deny an otherwise suitable nonconforming use. This is incorrect and is a flawed understanding of the law.

That respondents would argue their position so unabashedly is understandable inasmuch as some of our recent jurisprudence in this area has imprecisely articulated fundamental principles. The controlling precedent and reasoning in this area is provided by *Austin v Older,* 283 Mich 667, 676; 278 NW 727 (1938), in which our Supreme Court stated:

> An ordinance requiring an immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained.

As *Austin* makes clear, the most that an ordinance can accomplish is a limited restriction on the owner's rights, pursuant to the police power, to

Further, the ordinance provides:

> A nonconforming use of a structure, a nonconforming use of land or a nonconforming use of a structure and land shall not be extended or enlarged after passage of this ordinance by attachment on a building or premise of additional signs intended to be seen by off premises *or by the addition of other uses in a nature which would be prohibited by the district involved. [Id.* (emphasis added).]

prevent the expansion of nonconforming uses. Indeed, it is to assist the zoning authorities in not acting unconstitutionally that the Legislature enacted MCL 125.583a(2); MSA 5.2933(1)(2), which allows establishment by ordinance of the requirements regarding resumption, restoration, reconstruction, extension, or substitution of nonconforming uses and structures. It was pursuant to this authority that ordinances such as Clarkston's § 910.04(3) were enacted. Thus, as is appropriate, municipal ordinances such as § 910.04(3) properly prohibit the enlargement, expansion, or extension of nonconforming uses but also provide for the diminution of nonconforming uses without requiring cessation. In so doing, the proper balance is struck between the municipality's interest in gradually eliminating nonconforming uses and the property owner's constitutionally protected rights in the use of his property. *Austin, supra.*

Adherence to these principles can be seen in *Norton Shores v Carr,* 81 Mich App 715, 720; 265 NW2d 802 (1978), and *White Lake Twp v Lustig,* 10 Mich App 665, 673; 160 NW2d 353 (1968), and even in the potentially confusing *Jerome Twp v Melchi,* 184 Mich App 228; 457 NW2d 52 (1990). The holding in *Jerome Twp* seems to suggest that *any* change in the nature and size of a nonconforming use is an extension of a prior nonconforming use and can be abated as a nuisance per se. *Id.* at 232. However, when closely read in the context of its supporting precedents, *Jerome Twp* can be understood as supporting the position that only extensions or expansions of prior nonconforming uses can be abated as a nuisance per se. In *Jerome Twp,* the nonconforming use was not static, but was expanding in a direction that increased rather than diminished the nonconformity. *Id.* at 233. Therefore, the Court found it constituted a nui-

sance per se. *Id.* As is apparent, not every change in a nonconforming use constitutes an extension of a prior nonconforming use. *Id.; Norton Shores, supra; White Lake Twp, supra.* Rather, as the Supreme Court has mandated, the rule is that when the proposed use does not expand or extend the nonconformity, the property owner, or his successors can continue the nonconforming use. *Austin, supra.*

We further point out that this approach is even consistent with the public policy statement in the ordinance. See § 910.01. While § 910.01 can be read as being in conflict with the gradualism of § 910.04(3), we decline to so read § 910.01 because of the duty to read legislation, where possible, so as to ensure its constitutionality, *Rohan v Detroit Racing Ass'n,* 314 Mich 326, 341-342; 22 NW2d 433 (1946), and also to interpret statutes, where possible, as consistent with one another. *Brown v Manistee Co Road Comm,* 204 Mich App 574, 577; 516 NW2d 121 (1994). Accordingly, it must be understood that § 910.04(3) gives citizens specifics regarding how the City of the Village of Clarkston will implement the public policy of § 910.01. That is, § 910.04(3) explains the city's specific process for its stated public policy of gradually phasing out nonconforming uses.

Petitioners next argue that the circuit court improperly interpreted the ordinance with regard to the ZBA's exercise of discretion under § 910.04(3). The circuit court concluded that the ZBA is not required to grant a petition to change a nonconforming use even in cases where it finds the proposed use would diminish nonconformity. The circuit court's interpretation of the ordinance is incorrect because the verb "may" in the first sentence of § 910.04(3) relates to the owner of the nonconforming use, not to the ZBA. Accordingly,

the property owner may change the nonconforming use to another nonconforming use, and pursuant to the first sentence of § 910.04(3), the only role that the ZBA plays, assuming all other ordinance requirements are met, is to determine whether the new nonconforming use is moving toward conformity. Moreover, the circuit court's interpretation of the ordinance would allow the ZBA to operate without standards and thus cause its actions to be constitutionally impermissible. *Osius, supra.* As outlined above, this construction we are required, by ancient judicial disciplines, to eschew. See *Rohan, supra.* Thus, for this reason also, we adopt the reading that will ensure the constitutionality of this ordinance.

We reject petitioners' final argument that the decision of the ZBA had the effect of totally prohibiting a bed and breakfast land use within the boundaries of the City of the Village of Clarkston. Petitioners' argument is flawed inasmuch as, to make such a showing, it is necessary to demonstrate the need for the land use in the city or surrounding area. *English v Augusta Twp,* 204 Mich App 33, 37-38; 514 NW2d 172 (1994). Petitioners did not make such a showing in this case.

We reverse the decision of the trial court and remand to the ZBA for proceedings in accordance with this opinion.