TOWNSHIP OF WHITE LAKE v. LUSTIG.

1. ZONING—NONCONFORMING USES—ORDINANCE.
   Lawful uses existing on land prior to enactment of a valid zoning ordinance may not be barred by a nonconformity with the ordinance (CL 1948, § 125.286).

2. SAME—NONCONFORMING USE—EXTENSION—NUISANCE.
   Changing the nature and size of a nonconforming use constitutes an extension of a prior nonconforming use and is therefore a nuisance (CL 1948, § 125.286).

3. SAME—LIMITATION OF NONCONFORMING USES—ALTERATIONS OR ADDITIONS.
   Limiting further extension of a nonconforming use by prohibiting alterations and additions to existing buildings is a valid exercise of governmental power (CL 1948, § 125.286).

4. SAME—NONCONFORMING USE.
   Continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a zoning ordinance and the use must be within the spatial confines of the prior use (CL 1948, § 125.286).

5. SAME—NONCONFORMING USE—AUTOMOBILE WRECKING.
   Operations in use of property by defendants to store 200 cars, cut them up, sell parts and haul remainder to a junk yard,

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 146.
   Regulation of vehicle wrecker or towing service business.   42 ALR 2d 1208.
   Automobile wrecking yard or place of business as nuisance.   84 ALR2d 653.
[2, 5] 58 Am Jur, Zoning § 158.
[3] 58 Am Jur, Zoning § 156.
[4] 58 Am Jur, Zoning § 155.
[6, 8] 58 Am Jur, Zoning § 93.
[7] 58 Am Jur, Zoning § 192.

with business open 7 days a week, where the prior owner had no more than 7 cars on the property, cut up the cars and hauled the whole to a junk yard, and conducted operations intermittently in his free time *held,* to be an expansion, to be different in nature, and to occupy a greater area than that determined by the prior use and therefore to be a violation of the zoning ordinance as exceeding a permitted nonconforming use (CL 1948, § 125.286).

6. Same—Prior Nonconforming Use—Notice.

Prior nonconforming use is affirmative defense to action to abolish use of land in violation of zoning ordinance and where it does not constitute a defense because of a failure of proof, there is not failure of notice, because it is impossible for the opposing party to give notice of the enlargement of the use (CL 1948, § 125.286).

7. Same—Violation—Laches.

Township which failed to bring action to abolish nonconforming use of property which existed for 9 years after passage of ordinance making it a nonconforming use *held,* not to be guilty of laches where change of use was made gradually (CL 1948, § 125.286).

8. Same—Violation of Ordinance—Finance of Trial Court—Abolition.

Finding of trial court that abolition was the proper remedy in action to abolish use of property as junk yard for about 200 cars in violation of ordinance, and that there was an expansion of the use at the time of the effective date of the ordinance, *held,* proper, where the present use did not equate with the permissible use that could have been continued on the property, the intermittent junking of about 5 cars at a time (CL 1948, § 125.286).

Appeal from Oakland; Adams (Clark J.), J. Submitted Division 2 November 8, 1967, at Lansing. (Docket No. 2,831.) Decided April 2, 1968.

Complaint by the Township of White Lake, a Michigan municipal corporation, against William C. Lustig and Josephine T. Lustig seeking an injunction restraining defendants from storing junk

on their property in violation of a zoning ordinance. Injunction granted. Defendants appeal. Affirmed.

*Paul M. Mandel,* for plaintiffs.

*Anthony Renne,* for defendants.

McGREGOR, J.   This is an appeal from an injunction restraining defendants from using their land as a storage yard and sales place for junked automobiles and used automobile parts.   The injunction was sought on grounds that the use was inconsistent with the zoning classification as an agricultural district.   The land assumed this classification as a result of an ordinance[1] adopted March 12, 1955, on authority of the township rural zoning act.   CL 1948, § 125.271 *et seq.,* as amended (Stat Ann 1958 Rev and 1968 Cum Supp § 5.2963[1] *et seq.*).

---

[1] The pertinent portions of the ordinance are here reprinted.

"Article 3, General provisions, § 3.1.   Uses.   Except as herein provided, no building, lot, land or part thereof shall be used, altered, constructed or reconstructed, nor shall alterations be made in any existing building in any of the districts or zones hereinafter established except in conformity with the provisions of this ordinance which apply to the district or zone in which the same shall be located.

"§ 3.2.   Nonconforming uses.   Any lawful nonconforming use existing at the time of the passage of this ordinance or any amendment thereto, continued subject to the provisions hereof, provided that the building or lot or land involved shall neither be structurally altered or enlarged unless such altered or enlarged part shall conform to the provisions of this ordinance for the district in which the same is located.   The right to continue a nonconforming use may be lost under certain circumstances as hereinafter set forth.

"§ 3.3.   Loss of right to continue nonconforming use.   When a nonconforming use of property is discontinued through vacancy, lack of operations or otherwise, for a continuous period of 8 months, thereafter no right shall exist to maintain on said property a nonconforming use.

"§ 3.4.   Changing back to nonconforming use prohibited.   No conforming use, if changed to a use permitted in the district in which the same is located, shall be resumed or changed back to a nonconforming use.

"Article 5, districts, § 5.1.   Establishment of districts.   For the purpose of this ordinance, White Lake township is hereby divided

The party in possession prior to defendants used a portion of this land to cut up junked automobiles. The record discloses that the prior party had 1, 2,

into the following zoning districts which may be referred to either as districts or zones:

Residence 1 district
Suburban Farms district
Commercial 1 district
Manufacturing 1 district
Agricultural 1 district
Recreational district
Trailer coach park 1 district.    *    *    *

"Article 10, Agricultural district, § 10.1. Uses permitted. In all agricultural districts no building or land, except as otherwise provided in this ordinance, shall be erected or used except for one or more of the following specified uses:

"(a)  All uses permitted in residence 1 district and suburban farms district.

"(b)  Farm buildings and greenhouses.

"(c)  General farming including livestock and poultry raising, dairying, horticultural, farm forestry and similar bona fide agricultural enterprises or use of land and structures, except a farm operated wholly or in part for the disposal of garbage, sewage, rubbish, offal and wastes from rendering plants.

"(d)  Public and private stables, riding academies, office of a veterinarian and animal clinics.

"(e)  Truck gardening and nurseries.

"(f)  Public utility buildings, such as substations, without service or storage yards and railroad right-of-way.

"(g)  Private parks, gun clubs, golf courses and golf driving ranges and cemeteries upon approval of the township zoning board.

"(h)  The raising of fur bearing animals and kennels, when approved by the board of appeals.

"(i)  Airports, landing fields and platforms, hangars, masts and other facilities for the operation of aircraft and after a public hearing and approval of the township board of appeals.

"(j)  Accessory buildings or structures and uses customarily incidental to any of the above uses when located on the same property. One temporary building for the sale of the produce of any of the above uses, which shall be located not less than 25 feet from the street or highway right-of-way line, and further, provided, that an open space for parking, 25 feet off the street or highway right-of-way be provided for the patrons of such roadside market; and further, provided, that such building shall be such a portable construction that the building shall be removed from its roadside location during the season that it is not in use as a roadside market.

"(k)  No occupied house trailer shall be parked on any site, lot, field or tract of land within the township of White Lake not specifically licensed for the purpose; except that, nothing herein contained shall prohibit the parking without charge therefor, of not more than one occupied house trailer on the premises of any occupied dwelling, provided that the operator of such house trailer, within one week after his arrival, shall make application to the building inspector for a permit, which permit, if granted, shall limit the time of such parking

3, or at most 5 cars on the premises at any one time. The operations were conducted by this prior possessor intermittently as something to do during his spare time and during lay-offs from his regular employment. This use began in 1947, eight years before the passage of the ordinance.

Defendants took over the operation in 1957, when there were 2 junked automobiles and assorted junk on the premises. Defendants' industry has built the operation until it reached approximately 200 cars at the time of trial. They have added a house trailer which is used as a warming shack, tool shed, office, and have expanded the usable area through the filling of swampy sections of the premises. Defendants sell the used automobile parts they have removed from these vehicles on a 7-day-a-week basis, although they conduct salvage operations 5 days a week.

On June 28, 1965, plaintiff filed a complaint, alleging the zoning violation and the fact that defendants had more than 50 junked automobiles on the premises. Answering, defendants stated as a defense the prior nonconforming use.

Defendants moved for summary judgment submitting affidavits to the fact that the land was used

---

to a period not longer than three weeks from the date of application therefor. * * *

"Article 13. Violations and penalties. Any firm, corporation or person who is convicted of violating any of the provisions of this ordinance shall be fined not less than $25.00 nor more than $100.00 for each offense or shall be punished by imprisonment in the county jail for a period of not to exceed 90 days for each offense, or may be both fined and imprisoned as provided herein. Each day a violation occurs shall constitute a separate offense. Any building which is erected, repaired, altered, moved or converted or any use of land which is begun or changed subsequent to the effective date of this ordinance and in violation of any of the provisions thereof is hereby declared a nuisance *per se.* The board of appeals, any person designated by the township board, or any aggrieved person may institute a suit to have the nuisance abated. The rights and remedies provided herein are cumulative and in addition to all of the other remedies provided by law."

since 1947 as a storage place for junked automobiles. A counteraffidavit was submitted and the motion was denied.

The court's pretrial statement puts forth as issues of fact: the operation of defendants' business in violation of the township ordinance and the continuation of a nonconforming use. This pretrial statement sets forth as facts conceded by each of the parties: the ownership of the premises, reasonableness of the zoning ordinance, and defendants' use of the land for junking purposes. The record shows no attempt to use pretrial discovery procedures by either party.

At trial, plaintiff established a prima facie case of a violation of the ordinance. Defendants, during their presentation, established the fact of a prior nonconforming use on the premises. Plaintiff, in rebuttal, limited the extent of the use prior to the passage of the ordinance to a few cars.

At the conclusion of testimony, the court found the extent of the prior nonconforming use to be 5 cars, that the extent of the present use is 200 junked automobiles, that the defendants' activities are an enlargement of the prior use, a violation of the zoning ordinance, that it wished to explore the question of laches, and set a hearing date for the latter question.

At the hearing to determine whether laches was present, defendants raised an objection to the lack of notification on litigation of the question of enlargement of the prior nonconforming use. The court, after hearing testimony on laches, rules there was a change of occupancy, the lapse of time was of benefit and not a detriment to the defendants, and the defendants would be permitted time to relocate before the effective date of an injunction forbidding the questioned use of the premises.

From the foregoing we have been presented the following questions for determination:

(1) Was there an enlargement of the prior existing use so as to preclude the defense of continuance of a prior use?

(2) Was there a contravention of the notification requirement of GCR 1963, 111.1 by a failure to notify the defendants of the enlargement of their use?

(3) Did the defendants have the right of notification of the enlargement through due process guarantees of the Constitutions of the State of Michigan and the United States?

(4) Was the failure of plaintiff to bring an action for 9 years after the passage of the ordinance laches, precluding the enforcement of the ordinance?

(5) Is the proper remedy for the nuisance presented in this case abolition rather than control and regulation?

(1) Lawful uses existing on the land prior to the enactment of a valid zoning ordinance may not be barred by a nonconformity with such ordinance. CL 1948, § 125.286 (Stat Ann 1958 Rev 5.2963[16]). These prior nonconforming uses may be extended through provisions in the ordinance. CL 1948, § 125.286, *supra*. This provision is not the subject matter of this litigation. No action requesting extension of defendants' use was taken by them. The plaintiff does not wish to argue procedure; it seeks abolition of a nonconforming use.

Defendants' position is that confining the nonconforming use to the same nature and premises as that of their predecessor protects their present use as a lawful use existing at the time of passage of the ordinance. The authority presented for this position is *City of Hillsdale* v. *Hillsdale Iron & Metal Company, Inc.* (1960), 358 Mich 377. The

Supreme Court there ruled that the position of the trial court was correct as to the determination that changing the nature and size of the use constitutes an extension of the prior nonconforming use and is therefore a nuisance (p 386):

"Defendant says this mechanization and modernization and extension of its operations from storage to processing is necessary to enable it to meet competition. Plaintiffs say it amounts to a change in and an extension of the nonconforming use. In this plaintiffs are supported by *Austin* v. *Older* (1938), 283 Mich 667, and *Cole* v. *City of Battle Creek* (1941), 298 Mich 98.

"The trial court's decree was correct in prohibiting and enjoining the use and maintenance of machinery, equipment and buildings placed on the premises after the effective date of the ordinance and used for processing metal and for operations which constitute an extension of a nonconforming use."

The above cannot be taken as an all-inclusive rule of law, but as one portion of a larger picture. Moving our attention, we find in *Austin* v. *Older, supra* (p 678):

"Limiting the further extension of a nonconforming use by prohibiting alterations and additions to existing buildings is a valid exercise of governmental power."

Elaboration of this area of the law is found in *Township of White Lake* v. *Amos* (1963), 371 Mich 693, 699, 700:

"The lawful use of property existing at the time of enactment of a zoning ordinance may be continued with the provisions of such ordinance. (CL 1948, § 125.286 [Stat Ann 1958 Rev § 5.2963(16)]). The undisputed testimony of defendant Amos was that

the southernmost 50 feet of parcel B was essential to the operation of the race track, and that such area was used continuously, during the racing season only, until issuance of the injunction precluding such use. This Court has held that where an occupational use is seasonal there remains effective use during periods of inactivity between seasons."

Limitations on the area covered by the prior nonconforming use was held to be the subject of valid ordinances by *Patchak* v. *Township of Lansing* (1960), 361 Mich 489, 499:

"No nonconforming use was proven as to the south 10 acres. The trial court erred in finding the ordinance unconstitutional and void as to this portion of the parcel."

In the treatment of a problem similar to the present one and to the one in *Patchak, supra,* this Court held, in *Township of Commerce* v. *Rayberg* (1967), 5 Mich App 554, 557:

"Thirdly, defendants argue that a nonconforming use established on a parcel of land is not limited in volume and area to that part of the area used at the time of the enactment of the ordinance. While the foreign authorities cited by defendant seem to support this position, we cannot use them as precedent if there is controlling Michigan law on the subject. It is our opinion that *Patchak* v. *Township of Lansing* (1960), 361 Mich 489, is controlling authority and the nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted."

The detailed examination of the cases requires us to hold that it is the law of Michigan that the continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a valid

zoning ordinance and that the use must be within the same spatial confines that the prior use occupied.

Defendants have 200 cars on the land; their predecessor had no more than 5, 6, or 7. Defendants cut up autos and sell some parts and haul the remainder to a junk yard. Their predecessor cut up the cars and hauled the whole to a junk yard. Defendants maintain a business and an office, open 7 days a week, on the premises. Their predecessor conducted operations intermittently in his free time.

We must find the operations and use of the land have been expanded, are different in nature, and occupy a greater area than that determined by the prior use.

(2), (3) General Court Rule 1963, 111.1 states:

"A pleading which sets forth a claim for relief * * * shall contain (1) a statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend, * * *

".7. A party shall in separate defenses set forth the facts constituting any affirmative defense, such as * * * any defenses which by reason of other affirmative matter seeks to avoid the legal effect or defeat the claim set forth in plaintiff's complaint in whole or in part."

Defendants assert the use of the land prior to the passage of the ordinance precludes the grant of relief. Prior nonconforming use is an affirmative matter, as it would avoid the legal effect of the ordinance and the claim of the plaintiff. This Court cannot say that proof of fact allegations made in a manner that does not constitute a defense to an action would amount to surprise, failure of notice, or failure to plead.

Defendants are aware of the authority upon which we rely in our decision on the questions of substantive law. All cases decided by the Supreme Court were announced in 1964 or earlier. They are not affected by a change of law or burden of proof. They have alleged a general fact and proved that fact in a manner that does not constitute a defense. Notice by an opposing party in such a case is impossible and cannot be required.

(4) Laches does not come about through mere passage of time. It is based on the equitable maxim, "he who seeks equity must do equity." It is essentially a long period of inaction in asserting a right, attended by such intermediate change of conditions as to render inequitable the enforcement of that right.

Defendants claim their change of conditions as the filling of the back of their lot, the purchase of a house trailer to be used as an office, building of a warming shed, and the establishment of a volume of business. The record discloses that these detriments accrued over a period of 7 years, when the land use changed from a negligible expansion to an expansion and extension of the prior use, and when plaintiffs could first bring suit has not been shown. The change in use did not strike as a lightning bolt, but festered as an insidious growth upon the landscape. The detriment suffered by the defendants accrued to them through their own acts in violation of the ordinance. The time of which they had taken advantage had accrued to their benefit. A detriment illegally incurred does not appeal readily to the conscience of a court and, in this case, does not appeal to the conscience of this Court. Further comment on the question of laches is unnecessary. Equity will grant relief appropriate to the case before it.

(5) The conclusion of the trial court that there was an expansion of the use at the time of the effective date of the ordinance is correct. The expansion of the use has taken place to such an extent as to bring to the land another use, namely, the establishment of a junk yard. The permissible use that could have been continued on this property is the intermittent junking of approximately 5 cars at one time. The present use does not equate itself with that use. We place great reliance on the findings of the trial court. Those findings indicate a complete change of use, thereby dictating abolition as the proper remedy. See the Ordinance, art 3, § 3.3 (footnote 1, *supra*).

Affirmed. Costs to appellee.

T. G. KAVANAGH, P. J., and FITZGERALD, J., concurred.