CITY OF ROCHESTER HILLS v SOUTHEASTERN OAKLAND
COUNTY RESOURCE RECOVERY AUTHORITY

Docket No. 134856. Submitted October 10, 1991, at Detroit. Decided
December 30, 1991, at 9:10 A.M. Leave to appeal sought.

The City of Rochester Hills brought an action in the Oakland
Circuit Court against the Southeastern Oakland County Re-
source Recovery Authority, seeking a temporary restraining
order prohibiting continuation of the defendant's composting
operation on its landfill site in the city and alleging that the
composting operation constituted an illegal, nonconforming use
that amounted to a nuisance per se. The court, Fred M. Mester,
J., denied the request, finding that the composting operation
did not violate city ordinances and was a lawful, nonconform-
ing use of the plaintiff's property. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in finding that the composting
operation was a lawful, nonconforming use that had not been
improperly intensified or expanded. There was no evidence that
the composting operation existed before 1967, when the subject
property was rezoned and classified as single-family residential,
its present classification. Therefore, the composting operation
was not a legal, nonconforming use of the property at any time
thereafter. The fact that the composting operation existed
before later zoning ordinances were enacted in 1977 and 1986 is
irrelevant because the residential classification of the property
never changed and, therefore, neither did the illegal nature of
the composting operation.

2. The expansion of the composting operation from a legal
incidental use of the defendant's property as a landfill to a use
that would eventually replace the landfill, a lawful, noncon-
forming use, was an attempt to prolong the life of defendant's
property and constituted an unlawful change in the nature of
the landfill.

Reversed and remanded.

REFERENCES

Am Jur 2d, Zoning and Planning §§ 145.5, 182, 184, 185, 200, 201,
203.

See the Index to Annotations under Nonconforming Use; Nui-
sances.

1. Zoning — Nonconforming Uses — Nuisance Per Se.

    A change in the nature and size of a nonconforming use of land constitutes an extension of the prior nonconforming use and is a nuisance per se.

2. Zoning — Nonconforming Uses.

    Ordinances that protect existing nonconforming uses of land are intended to protect only those uses legally established before the enactment or effective date of the restrictive regulation; they are not intended to protect uses that were not legally commenced or continued.

3. Zoning — Nonconforming Uses.

    A landowner may not change the nature of a nonconforming use of land by expansion of an accessory or incidental use of the premises or by an expansion, intensification, or change in the original nature of the nonconforming use itself.

*Beier Howlett* (by *Lawrence R. Ternan* and *John D. Staran*), for the plaintiff.

*Seyburn, Kahn, Ginn, Bess, Howard & Harnisch, P.C.* (by *Marty A. Burnstein*), for the defendant.

Before: Hood, P.J., and Murphy and Cavanagh, JJ.

Per Curiam. Plaintiff, the City of Rochester Hills, appeals as of right an opinion and order entered by the Oakland Circuit Court that denied plaintiff's request for a preliminary injunction and found that defendant Southeastern Oakland County Resource Recovery Authority's composting operation did not violate city ordinances and was a lawful, nonconforming use of defendant's property. Consequently, the court dismissed counts I, II, and IV of plaintiff's complaint and scheduled a further hearing on count III, which alleged a claim of public nuisance. Plaintiff challenges only the court's determination that the composting operation on defendant's property was a lawful, nonconforming use. We reverse.

I

Defendant is a nonprofit corporation founded in 1955 to collect and dispose of residential, commercial, and municipal waste. Defendant services fourteen Oakland County communities: Berkley, Beverly Hills, Birmingham, Clawson, Ferndale, Hazel Park, Huntington Woods, Lathrup Village, Madison Heights, Oak Park, Pleasant Ridge, Royal Oak, Royal Oak Township, and Troy. In 1958, defendant obtained a license and established the landfill operation at issue on 183 acres of a 240-acre site in Avon Township. This site is currently within the boundaries of plaintiff city.

When defendant established the landfill, the site was zoned agricultural. In 1962, this classification was changed to general farm. In 1967, the property was rezoned as single-family residential. Although rezoned in 1977 and again in 1986, defendant's property has remained classified as single family residential. The parties agree that the landfill is a lawful, nonconforming use.

As early as 1971, defendant began accepting leaves collected in the autumn by its member communities. Once delivered to the landfill, these leaves either were used in the landfill process itself or were composted on the site. The composted leaves were then either used at the landfill or removed to other locations where they were available for use by the water authority and the general public.

The composting of lawn clippings began in 1988 with a pilot program that involved only one of defendant's member communities. In 1989, defendant acquired a windrow-turning machine, a new technological development that improved the efficiency of the composting operation. Defendant also began accepting lawn clippings from three more of

its member communities. In 1990, defendant acquired a shredding and screening machine and began accepting grass clippings from all fourteen of its member communities. Before defendant began composting source-separated grass clippings, the grass was buried in the landfill along with the other rubbish.

From 1972 to 1990, most of the composting activity was conducted on the southeastern and southwestern quadrants of the landfill site, in areas south of the Honeywell Drain known as the Mason and Faulkender farms, respectively. However, there was some composting of leaves north of the Honeywell Drain in 1985 and 1986. Additionally, defendant began composting grass clippings north of the Honeywell Drain in May and June, 1990. In 1988 or 1989, plaintiff began to receive complaints from residents living near the landfill concerning increased activity on the site and the dumping of "garbage" (later determined to be grass clippings) on the Mason farm. In early 1990, residents complained about dust, increased truck traffic, noise from machinery operating at the landfill, and, in particular, the odor emanating from the composting operation.

Consequently, plaintiff commenced the present action, seeking a temporary restraining order prohibiting continuation of the composting operation and alleging, among other things, that defendant's composting operation constituted an illegal, nonconforming use that amounted to a nuisance per se.

II

A nonconforming use is a use that lawfully existed before the enactment of a zoning ordinance

and that is maintained after the effective date of the ordinance, even though it does not comply with the restrictions applicable to the district in which it is situated. 1 Anderson, American Law of Zoning (3d ed), § 6.01, p 446, and Cumulative Supplement, December 1990, § 6.01, pp 91-92. See also *Jerome Twp v Melchi,* 184 Mich App 228, 231; 457 NW2d 52 (1990); *Eveline Twp v H & D Trucking Co,* 181 Mich App 25, 29; 448 NW2d 727 (1989). A lawful, nonconforming use may be continued after enactment or amendment of restrictive ordinances, *Jerome Twp, supra,* 231; MCL 125.286(1); MSA 5.2963(16)(1), subject to the following limitations:

> Expansion of a nonconforming use is severely restricted. One of the goals of zoning is the eventual elimination of nonconforming uses, so that growth and development sought by ordinances can be achieved. Generally speaking, therefore, nonconforming uses may not expand. *Fredal v Forster,* 9 Mich App 215; 156 NW2d 606 (1967), *Hillsdale v Hillsdale Iron & Metal Co, Inc,* 358 Mich 377; 100 NW2d 467 (1960). The policy of the law is against the extension or enlargement of nonconforming uses, and zoning regulations should be strictly construed with respect to expansion.
>
> " '[I]t is the law of Michigan that the continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a valid zoning ordinance.' " *Dearden v Detroit,* 70 Mich App 163, 169; 245 NW2d 700 (1976); *Township of White Lake v Lustig,* 10 Mich App 665 [673-674]; 160 NW2d 353 (1968).
>
> The nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted. *Township of Commerce v Rayberg,* 5 Mich App 554; 147 NW2d 453 (1967). [*Norton Shores v Carr,* 81 Mich App 715, 720; 265 NW2d 802 (1978).]

A change in the nature and size of a nonconforming use constitutes an extension of the prior nonconforming use and is a nuisance per se. *Id.,* 722.

Ordinances that protect existing nonconforming uses, such as City of Rochester Hills Zoning Ordinance No. 200, art XVIII, § 1802, are intended to protect only those uses that were legally established before the enactment or effective date of the restrictive regulation. They are not intended to protect uses that were not legally commenced or continued. *Anderson, supra,* § 6.11, pp 474-475.

III

In the present case, the trial court found in pertinent part:

> Count IV alleges that composting is an "industrial use" and therefore, is prohibited in the R-3 single-family residential zoning district. However, the credible evidence establishes that SOCRRA's composting operation was ongoing before the current Zoning Ordinance was adopted and, therefore, is a lawful nonconforming use.
>
> . . . SOCRRA had a lawful nonconforming use to compost as well as to landfill long before the current R-3 zoning ordinance was enacted in 1986. Therefore, SOCRRA cannot be in violation of the zoning ordinances as it had a lawful nonconforming use.

After review of the record, we conclude that this finding was clearly erroneous. The relevant inquiry is not whether the composting operation was a use that existed before enactment of the most recent zoning ordinance, but whether the composting operation was a *legal* use of the property before the enactment of the 1986 ordinance. In

order to have constituted such a legal use before 1986, the composting operation on defendant's property must have predated any ordinance that would render such an operation a nonconforming use.

The evidence showed that defendant's composting of leaves at the landfill site at issue began as early as 1971. By this time, the area that included defendant's property had been rezoned and was classified as single-family residential. There was testimony that composting was an illegal use of this property after 1967, when it was zoned single-family residential. Thus, because there was no evidence that the composting operation existed before 1967, it was not a legal, nonconforming use of the property at any time thereafter. The fact that the composting operation existed before later ordinances were enacted is irrelevant, because the residential classification of the property never changed and, therefore, neither did the illegal nature of the composting operation.

However, there was also testimony that composting is a legal incidental use of property situated in an area that is zoned residential. In other words, a residential property owner may maintain a compost pile on his own premises for his own use. Thus, during the time that leaves were composted on defendant's property and were used primarily in the process of operating the landfill, the composting operation was a legal, incidental use of the property. Nevertheless, courts generally are no more favorably disposed toward an attempt to change the nature of a nonconforming use by expanding an accessory or incidental use of the premises than they are to an expansion, intensification, or change in the original nature of the nonconforming use itself. See anno: *Addition of another activity to existing nonconforming use as*

*violation of zoning ordinance,* 61 ALR4th 724, § 2[b], p 737, and anno: *Change in type of activity of nonconforming use as violation of zoning ordinance,* 61 ALR4th 902, § 13, pp 935-936.

The evidence in the record in this case showed that after defendant began composting the grass clippings collected from all its member communities, the volume of material being processed in the composting operation increased dramatically. During the years when leaves were composted and used in the landfilling process, a total of 10,000 to 15,000 tons of leaves were received over a period of six weeks in the autumn. The introduction of grass clippings to the composting operation resulted in a daily deposit of 130 tons of yard debris at the landfill from early spring through autumn, in addition to the usual autumn leaves.

Moreover, the record also shows that the actual nonconforming use, the landfill operation, was by this time winding down because the capacity of the site was nearly exhausted. By contrast, the composting operation now was not only conducted in areas adjacent to current landfill operations, but also on areas of the site where the landfill process had been completed. Although the landfill itself had a limited life span, the composting operation could be maintained indefinitely. When these facts are viewed in conjunction with the drastic increase in the volume of material being composted, the logical conclusion is that the composting operation was expanded from an incidental use to a use that would eventually replace the landfill in an attempt to prolong the life of defendant's property as a nonconforming use. This result is clearly contrary to established law.

Generally, this Court is reluctant to reverse findings of fact made by a trial court. See MCR

2.613(C). However, after review of the record in this case, we are left with a definite and firm impression that a mistake has been made and conclude that the trial court clearly erred in finding that the composting operation was a lawful, nonconforming use that had not been improperly intensified or expanded. See *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Accordingly, we reverse the trial court's dismissal of count IV of plaintiff's complaint and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.