*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF IMLAY,

              Plaintiff-Appellee,

v

SHARON SCHUTTE,

              Defendant-Appellant.

UNPUBLISHED
May 21, 2025
2:19 PM

No. 367304
Lapeer Circuit Court
LC No. 22-055692-CZ

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

This case arises from defendant's violation of a local zoning ordinance limiting the number of dogs permitted on residential property in Imlay Township. Plaintiff brought the instant action for injunctive relief to have defendant reduce the number of dogs she owned to comply with the applicable zoning ordinances. We affirm.

## I. BACKGROUND

Defendant is an owner and breeder of Shetland Sheepdogs. In 2003, defendant lived in Troy, Michigan, and owned approximately 15 dogs. That same year, she sought to move to a new home in Imlay Township. Before purchasing the property, she asked her realtor whether there were any restrictions on the number of dogs she could have on the lot. According to defendant, the realtor asked her friend, who was the Imlay Township Supervisor at the time, whether there were any limits on the number of dogs that residents could own in the Township. The realtor then told her that there were no limits on dog ownership. Defendant subsequently purchased the property and moved in with her dogs in November 2003. After moving, defendant regularly licensed her dogs with Lapeer County. Over the years, the number of dogs that defendant owned fluctuated and generally was anywhere between two and three dozen.

The Lapeer County Animal Control visited defendant's property in 2016.[1] According to defendant, the animal-control representative had no issues with how the dogs were being kept. However, because defendant owned nearly 40 dogs at the time, the person indicated that a kennel license would be appropriate and that for Lapeer County to issue one, the Township would have to approve.[2]

After the visit from animal control, defendant enlisted an attorney to help obtain that approval from the Township. The attorney submitted a special land use request to the Township. The Imlay Township Planning Commission discussed defendant's request at three separate meetings in 2016. At a meeting held on June 14, 2016, the Commission heard from staff planner Jason Bibby, who recommended against approving the request. The Commission tabled any further discussion "while zoning language is developed for private kennels in R-1 zoning."

The Planning Commission met again on August 9, 2016. Bibby presented a draft of zoning amendments that would allow private kennels. Defendant's attorney expressed some concerns regarding the draft, although the substance of those concerns is not reflected in the meeting minutes. One Commissioner moved to proceed with a public hearing on private kennels with a five-acre minimum and eight-dog maximum, but that motion was rescinded. The Commission ultimately tabled any further discussion to allow further research into the questions that were raised during the meeting.

On September 13, 2016, the Planning Commission met for the last time regarding defendant's situation. The following entry is listed in the minutes:

Private Kennels – Planner Bibby explained to the Commission that further research has determined that an administrative alternative in the form of a letter to Animal Control has been found. The letter would need to indicate that there currently is no provision for private kennels in Township ordinances and that no ordinance enforcement issues are currently pending. The recommendation of the planner is to use the administrative alternative and do no further work on an ordinance at this time. Discussion was held. Commissioner Parsch moved to adjourn the issue for two months to allow the Township to draft a letter; seconded by Commissioner Lloyd. Chairperson Goodreau moved to amend the motion to read "adjourn to the December meeting;" accepted and seconded by Commissioner Parsch. Amendment passed. Motion carried.

---

[1] It is not clear from the record what prompted Animal Control to visit defendant's home.

[2] This is consistent with the current county ordinance, which provides:

Any person who owns or keeps multiple dogs may, in lieu of obtaining individual licenses as required under this Ordinance and under the statutes of the State, apply to the Animal Control Division for a commercial kennel license[] [a]fter approval from the local municipality. [Lapeer County Animal Control Ordinance, art VIII, § A.]

The Township Supervisor wrote and sent the letter three days later.  The letter provided:

> There is no ordinance in Imlay Township regulating or allowing a private kennel.  The Township allows a commercial kennel in the I-1, I-2, AG, and B-2 zoning districts.  [Defendant] is in the R-1 zoning district.
>
> At the present time there is no complaint investigation or enforcement action being taken against [defendant].

Contrary to what was detailed in the meeting minutes from September 2016, defendant testified that she reached an agreement with the Township at that meeting.  She claimed that someone from the Planning Commission asked if she could get her dog count to 20 or less within 10 years, i.e., by 2026.  Defendant said that she had agreed to do so.  She also acknowledged in her testimony that the agreement was never reflected in any writing, including the various Commission meeting minutes.

In May 2022, Imlay Township Supervisor Steve Hoeksema[3] sent defendant a letter, which stated:

> It has been brought to the attention of Imlay Township that you are continuing to operate a dog kennel in the Township.  You were denied a kennel license because your house is in residential zoning.  At the time you were denied a kennel license you told the Township Board you would reduce the number of dogs you owned.  From the complaint[,] you have not reduced the number of dogs you have[;] this is a violation of the zoning ordinance.  You are allowed 4 (four) dogs.
>
> If you do not comply in 10 (ten) days the Township will have no choice but to take legal action against you.

Plaintiff filed suit in July 2022, seeking injunctive relief.  Plaintiff alleged that defendant violated § 4.13 of the Imlay Township Ordinances by impermissibly operating a "commercial kennel" by virtue of housing, boarding, or caring for more than four dogs on the premises.[4]  Defendant filed an answer in which she responded "Neither Admit or Deny" to virtually all of the

---

[3] Notably, Hoeksema was also the Township's supervisor in 2016 and attended the three Planning Commission meetings mentioned above.

[4] Section 4.13 of the Imlay Township Ordinances defines a "commercial kennel" as

> any lot or premises on which five (5) or more dogs or similar domestic pets, are either permanently or temporarily boarded.  A commercial kennel shall also include any breeding operation with five (5) or more such animals over one year of age.  Commercial kennels are permitted as principal permitted uses in the I-1 and I-2 Districts, and as special land uses in the in the [sic] AG and B-2 Districts . . . .  [Imlay Township Ordinances, § 4.13.]

allegations in the complaint. She did not raise any affirmative defenses, but did purport to raise a counterclaim, alleging that she and the Township came to an agreement in 2016 that would enable her to own no more than 20 dogs. Defendant claimed that the Township was now reneging on that agreement. Defendant later filed an amended answer, in which she continued to respond "Neither Admit or Deny" to the bulk of the allegations. In her amended answer, defendant again raised no affirmative defenses.

Defendant moved for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) (C)(5) (party lacks capacity to sue), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). She primarily argued that, because the zoning ordinance only came into effect in 2009 and she had owned and possessed more than four dogs since 2003, she was entitled to continue to do so even after the enactment of the zoning ordinance. Defendant contended that the doctrine of laches barred plaintiff's claim against her because plaintiff waited more than a decade after the enactment of the 2009 zoning ordinance to bring the instant suit. Defendant also asserted that plaintiff was estopped from seeking relief because it had agreed to allow defendant until 2026 to bring her dog count down to 20 or less.

In response, plaintiff argued that defendant could not invoke a legal nonconforming use or the doctrine of laches as defenses because she never pleaded either as affirmative defenses. Moreover, as to the laches argument, plaintiff argued that delay alone is insufficient and that defendant did not claim any prejudice from the enforcement's delay, which was necessary to establish laches in the first instance. Plaintiff therefore requested that defendant's motion be denied and that it be granted summary disposition instead.

The trial court denied defendant's motion for summary disposition under MCR 2.116(C)(8) and granted summary disposition to plaintiff under MCR 2.116(C)(9). The court noted that plaintiff did not need to plead in avoidance of any potential affirmative defenses, such as defendant raising a lawful nonconforming use for the property. The court ultimately agreed with plaintiff's argument that defendant failed to properly plead any affirmative defenses. Regarding equitable estoppel, the court noted that, assuming it had been pleaded as an affirmative defense, defendant needed to plead facts showing "exceptional circumstances," such as making significant expenditures in reliance on the approval, to warrant the application of the doctrine. The court observed that defendant failed to plead any facts in her answer to show that exceptional circumstances existed. That, coupled with the failure to plead any affirmative defenses, resulted in the trial court's decision to grant summary disposition in favor of plaintiff under MCR 2.116(C)(9).[5]

---

[5] To be clear, we discern the trial court's grant of summary disposition under MCR 2.116(C)(9) as being based on defendant's failure to plead any affirmative defenses and that, assuming defendant's pleading did raise the affirmative defense of equitable estoppel, there were insufficient facts to support the evocation of that defense. In other words, the court treated defendant's purported counterclaim as an unsuccessful attempt to plead the affirmative defense of equitable estoppel. This makes sense because the purported counterclaim did not meaningfully seek any relief in addition to prevailing on plaintiff's claim. On appeal, defendant does not challenge the

## II. ANALYSIS

Defendant raises numerous arguments pertaining to the trial court's order granting summary disposition to plaintiff under MCR 2.116(C)(9). For the reasons discussed herein, we conclude that the trial court did not err by granting summary disposition in favor of plaintiff.

This Court generally reviews decisions on motions for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). A "motion for summary disposition under MCR 2.116(C)(9) is tested solely by reference to the parties' pleadings." *BC Tile & Marble Co, Inc v Multi Building Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010) (quotation marks and citation omitted). When deciding a motion under this subrule, the trial court must accept as true defendant's well-pleaded allegations, and the motion is properly granted when a defendant fails to plead a valid defense to a claim. *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). "Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id*. at 425-426. The proper interpretation of an ordinance is likewise reviewed de novo. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016).

In ruling on plaintiff's motion for summary disposition, the trial court observed that defendant failed to plead any affirmative defenses. Defendant does not challenge that determination, but instead avers that she was not required to plead some of those affirmative defenses in the first instance. "An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff . . . for some reason not disclosed in the plaintiff's pleadings." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993). "Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118." MCR 2.111(F)(3). "A party that fails to raise an affirmative defense as required by MCR 2.111(F) waives the defense." *Harris v Vernier*, 242 Mich App 306, 312; 617 NW2d 764 (2000); see also MCR 2.111(F)(2).

First, defendant argues that she was not obligated to plead as an affirmative defense that her ownership of her dogs did not violate any current zoning ordinance. We agree that such a defense need not be pleaded as an affirmative defense, but that fact does not necessitate reversal. This position is distinct from a "nonconforming use," which we discuss in the next paragraph. An affirmative defense would require defendant to agree or accept that she was currently not compliant with any zoning ordinance, but that plaintiff nevertheless should not be entitled to relief for some alternative reason. Because this particular defense—that defendant was *not* in violation of any current ordinance—did not include any acceptance of liability, it is not an affirmative defense, and it was not required to be pleaded as one. However, as discussed later, defendant *admitted* liability

---

court's treatment of her counterclaim and does not otherwise address it. We therefore will treat defendant's purported counterclaim in the same manner: it is not an actual claim itself, but an attempt to assert an affirmative defense.

in her answer to plaintiff's complaint, and summary disposition was still warranted in plaintiff's favor under MCR 2.116(C)(9).

As noted, defendant also argues that she was not required to plead nonconforming use as an affirmative defense. "An existing nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341-342; 810 NW2d 621 (2011). "In other words, it is a lawful use that existed before the restriction, and therefore continues after the zoning regulation's enactment." *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993). In *White Lake Twp v Lustig*, 10 Mich App 665, 674; 160 NW2d 353 (1968),[6] this Court held that a nonconforming use is an affirmative defense. *Id*. Under a nonconforming-use theory, a defendant admits noncompliance with a current zoning ordinance while maintaining that they nonetheless are entitled to prevail for some other reason. This meets the definition of an affirmative defense. Here, because defendant was required to plead this affirmative defense and failed to do so,[7] the defense is waived. See *Harris*, 242 Mich App at 312.

Defendant additionally contends that she only learned after discovery that she had a nonconforming use and therefore could not have pleaded the affirmative defense when she filed her answer. We are not persuaded by this rationale. First, defendant testified that she was aware that there were no dog restrictions when she moved onto the property in 2003. Thus, from her perspective, she had a nonconforming use after the enactment of the 2009 zoning ordinance, and could have pleaded it as an affirmative defense in her answer. Second, assuming a person in defendant's position only became aware of the defense after discovery, defendant could have amended the responsive pleading to include that defense. See MCR 2.111(F)(3), citing MCR 2.118. Defendant made no effort to do so.

Defendant next argues that she was not required to plead laches as an affirmative defense. "Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert." *Knight v Northpointe Bank*, 300 Mich App 109, 115; 832 NW2d 439 (2013). However, delay alone is not a reason to bar a claim based on laches; instead, "[i]t is the prejudice occasioned by the delay that justifies the application of laches." *Id*.; see also *Dunn v Minnema*, 323 Mich 687, 696; 36 NW2d 182 (1949) ("This Court has repeatedly held that mere delay in attempting to enforce a right does not constitute laches, but that it must further appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right.").

Defendant provides no cogent argument in support of the claim that she did not have to plead laches as an affirmative defense. She additionally cites no supporting authority for the

---

[6] "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon [this Court], all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022); see also MCR 7.215(C)(2), (J)(1).

[7] Defendant only raised the issue in her motion for summary disposition.

proposition. The argument is therefore abandoned on appeal. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court"). Moreover, even if not abandoned, it is well established that laches is an affirmative defense. *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982), citing *Chippewa Co Bd of Supervisors v Bennett*, 185 Mich 544; 152 NW 229 (1915); *Attorney General v PowerPick Club*, 287 Mich App 13, 51; 783 NW2d 515 (2010).

Defendant also claims that there was a valid agreement between her and the Township, precluding plaintiff any relief. This claim sounds in the doctrine of equitable estoppel. "An equitable estoppel arises where (1) a party by representation, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Hughes v Almena Twp*, 284 Mich App 50, 78; 771 NW2d 453 (2009).

Related to this argument, the trial court noted that

> [e]ven if the township officials led defendant to believe the ordinances would not be enforced against her if she reduced the number of dogs she owned, zoning authorities are not estopped from enforcing their ordinances absent exceptional circumstances such as where a property owner makes significant expenditures in reliance on official approval for the planned use and the investment would be forfeit if the approval is later rescinded.

The court ruled that defendant did not plead any facts showing exceptional circumstances that would allow for the application of the doctrine of equitable estoppel. See *Hughes*, 284 Mich App at 78 ("Zoning authorities will not be estopped from enforcing their ordinances absent exceptional circumstances"). Defendant's argument does not address this salient aspect of the trial court's ruling, which precludes her from any relief on this matter. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) (stating that when an appellant fails to address the basis of the trial court's ruling, this Court need not consider granting any relief).

Even if the claim had merit, the record before us indicates that defendant only met with the Imlay Township Planning Commission. She provides no authority showing that the Planning Commission had authority to bind the Township to any agreement. The minutes from the Planning Commission meetings in which plaintiff participated also do not mention any agreement between the Township and defendant. At most, according to defendant's testimony, one person at the meeting asked her if she could reduce the number of dogs she owned to 20 or less by 2026. There is no evidence that any vote took place, or that this discussion constituted a binding agreement. Thus, had defendant's pleading raised the affirmative defense of equitable estoppel, and assuming such an offer or representation was made by someone on the Planning Commission, without pleading any facts demonstrating any "exceptional circumstances," defendant still would not be able to avail herself of the doctrine of equitable estoppel. See *Hughes*, 284 Mich App at 78-79 (equating exceptional circumstances with making significant expenditures in reliance on the representation).

However, a lack of affirmative defenses on defendant's part does not automatically mean that plaintiff is entitled to judgment in this matter. The question remains whether the *pleadings* show that plaintiff is entitled to judgment. See *Slater*, 250 Mich App at 425-426. In its complaint, plaintiff alleged that defendant was in continuing violation of § 4.13 of the Imlay Township Ordinances by housing more than four dogs in her home. In her answer, defendant replied "Neither Admit or Deny" to the relevant allegations.[8]

Defendant's responses are properly viewed as admissions because they failed to comply with the court rules. MCR 2.111 provides in pertinent part:

> (C) Form of Responsive Pleading. As to each allegation on which the adverse party relies, a responsive pleading must
>
> (1) state an explicit admission or denial;
>
> (2) plead no contest; or
>
> (3) state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of an allegation, which has the effect of a denial.
>
> (D) Form of Denials. Each denial must state the substance of the matters son which the pleader will rely to support the denial.
>
> (E) Effect of Failure to Deny.
>
> (1) Allegations in a pleading that requires a responsive pleading, other than allegations of the amount of damage or the nature of the relief demanded, are admitted if not denied in the responsive pleading.

In this case, defendant did not explicitly admit or deny the pertinent allegations, did not plead no contest, and did not claim a lack of sufficient knowledge to form a belief as to the truth of the allegations. Instead, she simply answered, "Neither Admit or Deny." The failure to respond in accordance with the court rules results in the allegations being deemed admitted. MCR 2.111(E)(1); see also *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 348 n 9; 833 N.W.2d 384 (2013); *Pitcher v Pitcher*, 314 Mich 648, 649; 23 NW2d 195 (1946) ("Defendant's answer to many of plaintiff's charges is that he neither admits nor denies the charges. The matters being such that he must be considered as having personal knowledge of them, his answer in practical effect stands as an admission"). Under the circumstances, where defendant has raised no affirmative defenses and has effectively admitted to continuously violating

---

[8] Defendant only "den[ied]" the allegation that she had "applied for a special land use permit to operate what she called a 'private kennel' at the Property, but the Township denied her request."

the zoning ordinance, the trial court properly granted summary disposition in favor of plaintiff on its claim seeking injunctive relief.[9]

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

---

[9] Although the trial court did not rely on defendant's responses in her answer as being admissions, this Court may affirm on alternate grounds as long as the trial court reached the correct result. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998). Additionally, we decline to address defendant's remaining arguments, which are either unpreserved, see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294; 14 NW3d 472 (2023), or are not relevant to the analysis under MCR 2.116(C)(9), which is limited to consideration of the pleadings, see *BC Tile & Marble*, 288 Mich App at 582.